POMERANTZ LLP
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com

*Attorney for Plaintiffs*

- additional counsel on signature page -

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CONTINENTAL GENERAL INSURANCE COMPANY and PERCY ROCKDALE, LLC, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>MALLINCKRODT PLC, SIGURDUR OLAFSSON, BRYAN M. REASONS, and PAUL BISARO,<br><br>Defendants. | **Case No.**<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs Continental General Insurance Company and Percy Rockdale, LLC (together, "Plaintiffs"), individually and on behalf of all others similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiffs and Plaintiffs'

own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Mallinckrodt plc ("Mallinckrodt" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiffs believe that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Mallinckrodt securities between June 17, 2022 and June 14, 2023, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Mallinckrodt develops, manufactures, markets, and distributes specialty pharmaceutical products and therapies, including certain opioid products, in the U.S., Europe, the Middle East, Africa, and internationally.

3.      In October 2020, Mallinckrodt filed for Chapter 11 bankruptcy protection while agreeing to settle its alleged role in the U.S. national opioid crisis for approximately $1.7 billion (the "Opioid Settlement"). As part of its Chapter 11 exit plan, Mallinckrodt agreed to make nine payments over eight years to an opioid-victims compensation trust (the "Trust") for the Opioid Settlement. The Company made its first payment of $450 million to the Trust as it emerged from Chapter 11 bankruptcy protection in June 2022. The Company's next payment of $200 million was due to the Trust in June 2023.

4.      Despite its ongoing financial obligations to the Trust for the Opioid Settlement, since emerging from Chapter 11 bankruptcy protection, Mallinckrodt has repeatedly assured investors of the Company's financial strength, including purported enhancements to its liquidity and balance sheet, as well as its overall prospects for continued financial stability and near- and long-term success.

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Mallinckrodt had overstated its financial strength, including

purported enhancements to its liquidity and balance sheet, following its emergence from Chapter 11 bankruptcy protection; (ii) accordingly, the Company overstated its ability to timely make one or more payments to the Trust for the Opioid Settlement; (iii) all the foregoing negatively impacted Mallinckrodt's ability and/or willingness to timely meet interest payment obligations on certain bonds; (iv) as a result of all the foregoing, the Company was at an increased risk of having to again file for Chapter 11 bankruptcy protection; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.     On June 2, 2023, *The Wall Street Journal* ("WSJ") reported that Mallinckrodt was again exploring bankruptcy as its next $200 million payment to the Trust for the Opioid Settlement came due.

7.     On this news, Mallinckrodt's ordinary share price fell $0.98 per share, or 40%, to close at $1.47 per share on June 5, 2023, the next trading day.

8.     On June 15, 2023, Mallinckrodt disclosed in an SEC filing that it had determined not to make interest payments on two bonds due that day and may need to file for bankruptcy.

9.     On this news, Mallinckrodt's ordinary share price fell $0.39 per share, or 30.95%, to close at $0.87 per share on June 15, 2023.

10.     On June 16, 2023, Mallinckrodt disclosed in an SEC filing that the Company and the Trust had agreed to extend the deadline for the Company's $200

million payment to the Trust for the Opioid Settlement from June 16, 2023 to June 23, 2023, while reiterating that the Company may need to file for bankruptcy.

11.   Then, on June 23, 2023, Mallinckrodt disclosed in an SEC filing that the Company and the Trust had again agreed to extend the deadline for the Company's $200 million payment to the Trust from June 23, 2023 to June 30, 2023, while reiterating that the Company may still need to file for bankruptcy.

12.   As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.   The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

15.   Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).   Pursuant to Mallinckrodt's most recent annual report on Form 10-K, as of February 24, 2023, there were 13,170,932 of the Company's shares outstanding.   Mallinckrodt's ordinary shares trade in the U.S. on the NYSE American ("NYSE").   Accordingly,

there are presumably hundreds, if not thousands, of investors in Mallinckrodt's ordinary shares located in the U.S., some of whom undoubtedly reside in this Judicial District.

16.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## **PARTIES**

17.     Plaintiffs, as set forth in the attached Certification, acquired Mallinckrodt securities at artificially inflated prices during the Class Period and were damaged upon the revelation of the alleged corrective disclosures.

18.     Defendant Mallinckrodt is organized under the laws of Ireland with principal executive offices located at College Business & Technology Park, Cruiserath, Blanchardstown, Dublin 15, Ireland.  The Company's ordinary shares have traded in an efficient market on the NYSE under the ticker symbol "MNK" since October 2022, before which the Company's ordinary shares traded in an efficient market on the over-the-counter market ("OTC") under the ticker symbol "MNKPF".

19.    Defendant Sigurdur Olafsson ("Olafsson") has served as Mallinckrodt's Chief Executive Officer, President, and a Director of the Company since June 25, 2022.

20.    Defendant Bryan M. Reasons ("Reasons") has served as Mallinckrodt's Executive Vice President and Chief Financial Officer at all relevant times.

21.    Defendant Paul Bisaro ("Bisaro") has served as Chairman of Mallinckrodt's Board of Directors at all relevant times.

22.    Defendants Olafsson, Reasons, and Bisaro are referred to herein collectively as the "Individual Defendants".

23.    The Individual Defendants possessed the power and authority to control the contents of Mallinckrodt's SEC filings, press releases, and other market communications.   The Individual Defendants were provided with copies of Mallinckrodt's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.   Because of their positions with Mallinckrodt, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.   The

Individual Defendants are liable for the false statements and omissions pleaded herein.

24.    Mallinckrodt and the Individual Defendants are collectively referred to herein as "Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

25.    Mallinckrodt develops, manufactures, markets, and distributes specialty pharmaceutical products and therapies, including certain opioid products, in the U.S., Europe, the Middle East, Africa, and internationally.

26.    In October 2020, Mallinckrodt filed for Chapter 11 bankruptcy protection while agreeing to settle its alleged role in the U.S. national opioid crisis for approximately $1.7 billion.  As part of its Chapter 11 exit plan, Mallinckrodt agreed to make nine payments over eight years to the Trust for the Opioid Settlement.  The Company made its first payment of $450 million to the Trust as it emerged from Chapter 11 bankruptcy protection in June 2022.  The Company's next payment of $200 million was due to the Trust in June 2023.

27.    Despite its ongoing financial obligations to the Trust for the Opioid Settlement, since emerging from Chapter 11 bankruptcy protection, Mallinckrodt has repeatedly assured investors of the Company's financial strength, including

purported enhancements to its liquidity and balance sheet, as well as its overall prospects for continued financial stability and near- and long-term success.

## Materially False and Misleading Statements Issued During the Class Period

28.    The Class Period begins on June 17, 2022, the day after Mallinckrodt issued a press release during after-market hours, entitled "Mallinckrodt Emerges from Chapter 11 with Strengthened Balance Sheet and Enhanced Financial Flexibility" (the "June 2022 Press Release"), which stated, *inter alia*, that "[t]he Company is moving forward as a diversified global specialty pharmaceutical company *with a strengthened balance sheet and increased financial flexibility* to invest in its business, execute its strategic initiatives, advance its pipeline and better meet the needs of patients" (emphasis added).

29.    The June 2022 Press Release also quoted Defendant Bisaro, who stated, in relevant part:

> Today marks a new beginning for Mallinckrodt as *we emerge well-positioned for long-term success, with a substantially stronger capital structure and major litigation matters permanently resolved*. As we move forward, the top priority for our new Board is working alongside management to review the business and develop a go-forward strategy to drive sustainable value for our patients, customers, partners, team members, shareholders and other stakeholders. We are focused on thoughtfully establishing a plan that builds on our innovation-driven therapies pipeline, capitalizes on Mallinckrodt's core strengths and *positions the Company for long-term sustainable growth*.

(Emphases added.)

30.    With respect to Mallinckrodt's financial condition following the Opioid

Settlement, the June 2022 Press Release stated, in relevant part:

> As a result of the reorganization process, **Mallinckrodt has significantly improved its financial position** and resolved numerous lawsuits the Company was facing prior to the Chapter 11 proceedings. The Company's Plan of Reorganization (the "Plan") and Irish law Scheme of Arrangement (the "Scheme"), which became effective today, include key legal settlements that resolve [*inter alia*] opioid claims brought against the Company . . . and provides for significant equitization of the Company's guaranteed unsecured notes.
>
> Mallinckrodt is now the first company that has permanently resolved opioid litigation on a global scale, including any future claims that might be brought for periods prior to emergence . . . .
>
> Implementing the Plan and the Scheme **strengthens the Company's balance sheet, reduces its total debt by approximately $1.3 billion and enables it to move forward with more than $250 million in cash and cash equivalents on hand**.

(Emphases added.)

31.    The June 2022 Press Release also stated the following with respect to

Mallinckrodt's new financing arrangements:

> In connection with emergence, Mallinckrodt issued $650 million in aggregate principal amount of new first lien senior secured notes. The proceeds of the notes will be used to, among other things, pay certain fees and expenses, satisfy other payment obligations under the Plan, and for other general corporate purposes. Mallinckrodt also entered into a $200 million accounts receivable financing facility.
>
> Pursuant to the Plan, Mallinckrodt also reinstated $495 million in aggregate principal amount of its existing first lien senior secured notes and issued $1.76 billion in aggregate principal amount of new first lien senior secured term loans to the holders of its existing term loans in satisfaction thereof, issued $323 million in aggregate principal amount

of new second lien senior secured notes to the holders of its existing second lien senior secured notes in satisfaction thereof and issued $375 million in aggregate principal amount of new second lien senior secured notes to the holders of certain of its existing unsecured senior notes in partial satisfaction thereof.

32.    On August 11, 2022, Mallinckrodt issued a press release announcing its second quarter 2022 financial results (the "2Q22 Press Release"), which highlighted that the Company is "*Committed to Strengthening [its] Balance Sheet, with a Disciplined Capital Allocation Focus*" and is "*Benefiting from Cash Generation and Significant Liquidity*" (emphases in original).

33.    The 2Q22 Press Release also quoted Defendant Olafsson, who stated, in relevant part:

> This quarter represented an important moment for Mallinckrodt as we began the work of turning the business around and moving forward with renewed focus on our patients, products, pipeline and people following the completion of our financial reorganization . . . . While the Company has faced many challenges, ***we have a strong foundation and significant potential***, which is why I am excited to lead Mallinckrodt alongside the new Board of Directors. Together, we are focused on Mallinckrodt's future and re-energizing the organization around our shared passion for making an impact on patients' lives by addressing unmet medical needs. ***Mallinckrodt today benefits from significant liquidity, meaningful cash flows from operations, a solid U.S. commercial platform and competitive positioning*** in Critical Care and Immunology. While we have work to do, the foundational pieces are in place to stabilize the core brands and ***return the business to sustainable growth and profitability over time***.
>
> * * *
>
> As we work to chart Mallinckrodt's path forward, our near-term priorities include strengthening the Company's balance sheet and

continuing to generate strong cash flow; stabilizing our portfolio and maximizing opportunities for our in-market products; and investing strategically in our pipeline with a focus on potential cash contribution and return on investment. ***We're confident that by executing on our plans, we can create long-term value for our stakeholders*** while improving outcomes for patients with severe and critical conditions.

(Emphases added.)

34.    In addition, the 2Q22 Press Release quoted Defendant Reasons, who

stated, in relevant part:

Having eliminated more than $1.3 billion in debt principal and closed a new $200 million accounts receivable financing facility with the overhang and expense of the opioid litigation now behind us, ***we have a clear path forward to continue operating the business in a responsible manner*** and delivering benefits to patients. Looking ahead, we are focused on further reducing debt as we continue enhancing operating efficiencies and generating additional cash through the successful execution of our strategic priorities.

(Emphasis added.)

35.    The same day, Mallinckrodt hosted a conference call with analysts and

investors to discuss the Company's second quarter 2022 results.   On the call,

Defendant Olafsson stated, *inter alia*:

I want to restate that ***Mallinckrodt today has a strong foundation underpinned by significant liquidity, meaningful cash flows from operation, a solid U.S. commercial platform and competitive positioning*** in critical care and immunology. And while we still have challenges ahead, ***I believe we are well equipped to meet them***. ***We have a clear path forward to stabilize the business by executing our near-term priorities*** and the top priority for me will be to reenergize our teams and helping to reinduce our stakeholders to Mallinckrodt.

> These efforts truly go hand in hand. Finally, the more I've learned about
> the company, the further my conviction has become that ***Mallinckrodt***
> ***has a strong future*** rooted in an unwavering focus on improving
> outcome for patients.

(Emphases added.)

36.     Also on August 11, 2022, Mallinckrodt filed a quarterly report on Form

10-Q with the SEC, reporting the Company's financial and operational results for its

second fiscal quarter ended July 1, 2022 (the "2Q22 10-Q").   The 2Q22 10-Q

represented, *inter alia*, that "we ***will*** make [a] payment[] of $200.0 million . . .

inclusive of interest, related to our opioid . . . related settlement[] upon the one year

anniversary of the [June 16, 2022] Effective Date"—*i.e.*, by June 16, 2023 (emphasis

added).

37.     The 2Q22 10-Q also indicated that Mallinckrodt could and would make

all nine payments over eight years to the Trust for the Opioid Settlement in a timely

manner, while simultaneously downplaying the risk of the Company's default under

applicable agreements, stating, in relevant part:

> Opioid claims were channeled to certain trusts, which ***will*** receive
> $1,725.0 million in deferred payments from the Company and certain
> of its subsidiaries (the "Opioid-Related Litigation Settlement")
> consisting of (i) a $450.0 million payment upon the Effective Date (of
> which $2.6 million was prefunded); (ii) a $200.0 million payment upon
> each of the first and second anniversaries of the Effective Date; (iii) a
> $150.0 million payment upon each of the third through seventh
> anniversaries of the Effective Date; and (iv) a $125.0 million payment
> upon the eighth anniversary of Effective Date (collectively, the "Opioid
> Deferred Payments") with the Company retaining an eighteen-month
> option to prepay outstanding Opioid Deferred Payments (other than the

initial Effective Date payment) at a discount (and to prepay the Opioid Deferred Payments at their undiscounted value even after the expiration of such eighteen-month period). The Opioid Deferred Payments are unsecured and are guaranteed by Mallinckrodt and its subsidiaries that are borrowers, issuers or guarantors . . . . The Opioid Deferred Cash Payments Agreement contains affirmative and negative covenants (including an obligation to offer to pay the Opioid Deferred Payments without discount upon the occurrence of certain change of control triggering events) and events of default (subject in certain cases to customary grace and cure periods). The occurrence of an event of default under the Opioid Deferred Cash Payments Agreement ***could*** result in the required repayment of all outstanding Opioid Deferred Payments and ***could*** cause a cross-default that ***could*** result in the acceleration of certain indebtedness of Mallinckrodt and its subsidiaries.

(Emphases added.)

38.    Appended as an exhibit to the 2Q22 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Olafsson and Reasons certified that the 2Q22 10-Q "fully complies with the requirements of Section 13(a) or 15(d), as applicable, of the [Exchange Act], as amended, and that the information contained in the [2Q22 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

39.    On November 8, 2022, Mallinckrodt issued a press release announcing its third quarter 2022 financial results.  The press release quoted Defendant Olafsson, who stated, in relevant part:

We made important progress executing on our strategic initiatives, including . . . ***improving our balance sheet and strengthening the organization*** with key leadership appointments at the executive and board levels, adding deep commercial and human resources expertise.

> More recently, we received approval and commenced trading on NYSE American, ***providing enhanced liquidity*** and access for our shareholders.
>
> * * *
>
> Looking ahead, ***I am confident we are well-positioned to continue advancing our strategic initiatives and create long-term value for shareholders*** while improving outcomes for patients with severe and critical conditions.

(Emphases added.)

40.     The same day, Mallinckrodt hosted a conference call with analysts and investors to discuss the Company's third quarter 2022 results.   On the call, Defendant Olafsson stated, *inter alia*:

> I want to reiterate my belief that ***Mallinckrodt today has a strong foundation underpinned by significant liquidity, meaningful cash flows from operations, a solid U.S. commercial platform, and competitive positioning*** in critical care and immunology.
>
> * * *
>
> We have a high visibility into our heads been some challenges ahead. And we remain committed to delivering on our goals and turning the business around. We're exactly where we said we would be last quarter and expect to deliver on our guidance for the full year. By executing on near term priorities, continuing to re-energize our organization, and delivering for stakeholders ***Mallinckrodt has a strong future ahead*** developing therapies designed to improve outcomes for patients.

(Emphases added.)

41.     Also on November 8, 2022, Mallinckrodt filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results

for its third fiscal quarter ended September 30, 2022 (the "3Q22 10-Q"). The 3Q22 10-Q contained substantively the same statements as referenced in ¶¶ 36-37, *supra*, representing that Mallinckrodt "will" make its $200 million payment to the Trust for the Opioid Settlement by June 16, 2023; and indicating that Mallinckrodt could and would make all nine payments over eight years to the Trust for the Opioid Settlement in a timely manner, while simultaneously downplaying the risk of the Company's default under applicable agreements.

42.     Appended as an exhibit to the 3Q22 10-Q were substantively the same SOX certifications as referenced in ¶ 38, *supra*, signed by Defendants Olafsson and Reasons.

43.     On February 28, 2023, Mallinckrodt issued a press release announcing its fourth quarter and fiscal year 2022 financial results (the "4Q/FY22 Press Release"). The 4Q/FY22 Press Release provided full-year 2023 financial guidance for Mallinckrodt, including, *inter alia*, adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA") of $510 million to $560 million, thereby indicating to investors that the Company not only planned to continue operating throughout 2023, but planned to reap earnings in excess of half-a-billion dollars throughout the year.

44.     The 4Q/FY22 Press Release also highlighted that Mallinckrodt "*Increased [its] Cash on Hand to $409.5 Million, Underscoring [its] Commitment*

16

*to Strengthening [its] Balance Sheet and [its] Disciplined Approach to Cost Management*" (emphasis in original).

45.    In addition, the 4Q/FY22 Press Release quoted Defendant Olafsson, who stated, in relevant part:

> We are pleased with our performance this quarter as we continued the steady execution of our strategic priorities . . . . We finished 2022 by exceeding our EBITDA guidance and achieving the high end of our net sales guidance for the year. ***We also increased cash on hand, reflecting our ongoing efforts to strengthen the balance sheet and optimize our cost structure.***
>
> * * *
>
> Looking ahead, 2023 is an important year for Mallinckrodt. We have some meaningful opportunities in the business . . . . In all, we believe ***Mallinckrodt is well-positioned to stabilize the business in the near term and achieve sustainable growth in the long term***. We have made solid progress on our key initiatives and remain committed to advancing our business strategy while improving outcomes for patients with severe and critical conditions.

(Emphases added.)

46.    The same day, Mallinckrodt hosted a conference call with analysts and investors to discuss the Company's fourth quarter and fiscal year 2022 results.  On the call, Defendant Olafsson stated, *inter alia*, that "[w]e . . . saw a slight increase in cash in hand during the fourth quarter and believe our liquidity will allow us to continue making important investments in the business."

47.    On March 3, 2023, Mallinckrodt filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operational results for its

fourth fiscal quarter and year ended December 30, 2022 (the "2022 10-K"). The 2022 10-K contained substantively the same statements as referenced in ¶ 37, *supra*, indicating that Mallinckrodt could and would make all nine payments over eight years to the Trust for the Opioid Settlement in a timely manner, while simultaneously downplaying the risk of the Company's default under applicable agreements.

48.     Appended as an exhibit to the 2022 10-K were substantively the same SOX certifications as referenced in ¶ 38, *supra*, signed by Defendants Olafsson and Reasons.

49.     On May 9, 2023, Mallinckrodt issued a press release announcing its first quarter 2023 financial results (the "1Q23 Press Release"). The 1Q23 Press Release reaffirmed the Company's full-year 2023 financial guidance, including, *inter alia*, adjusted EBITDA of $510 million to $560 million, thereby again indicating to investors that the Company not only planned to continue operating throughout 2023, but planned to reap earnings in excess of half-a-billion dollars throughout the year.

50.     The 1Q23 Press Release also highlighted that Mallinckrodt "*Increased [its] Cash on Hand to $480.0 Million and Reduced [its] Exposure to Interest Rate Volatility Through [an] Interest Rate Cap Agreement, Demonstrating [the Company's] Ongoing Focus on Disciplined Balance Sheet Management*" (emphasis in original).

51.    In addition, the 1Q23 Press Release quoted Defendant Olafsson, who stated, in relevant part:

> Mallinckrodt had a solid start to the year. We made steady progress on key opportunities in our branded portfolio and delivered sales growth in the Specialty Generics segment . . . . Further, **we increased cash on hand, demonstrating our continued commitment to disciplined capital management**.
>
> * * *
>
> As we have stated, 2023 is a pivotal year for Mallinckrodt. We have a number of opportunities ahead, as well as challenges from competitive pressures, **while we work to stabilize the business in the near term and position Mallinckrodt for sustainable long-term growth**. Overall, we are pleased with the performance this quarter, **as evidenced by our reaffirmation of 2023 guidance** . . . . We will continue to be sharply focused on advancing our strategic priorities, all while keeping our mission to improve outcomes for patients with severe and critical conditions at the core of everything we do.

(Emphases added.)

52.    The same day, Mallinckrodt hosted a conference call with analysts and investors to discuss the Company's first quarter 2023 results (the "1Q23 Earnings Call"). On the call, Defendant Olafsson stated, *inter alia*, that "[w]e again increased our cash on hand, demonstrating that disciplined cost management and strengthening the balance sheet are top of mind in every decision we make" and that "[i]t is great to see further improvement on this front."

53.    Also on the 1Q23 Earnings Call, Defendant Reasons stated, *inter alia*:

> We ended the quarter with roughly $680 million of liquidity. We reported cash and cash equivalents of $480 million, which included the

receipt of the CARES Act refund and maintained an undrawn accounts receivable credit facility of up to $200 million. Total principle debt outstanding at the end of the first quarter was $3.523 billion with net debt of $3.043 billion. We entered into an interest rate cap agreement during the quarter, which serves to reduce volatility on a portion of our floating interest rate exposure.

In all, we're pleased with the start of the year for the business overall and our ability to reaffirm our 2023 net sales and adjusted EBITDA guidance. We remain highly focused on improving our balance sheet in the months ahead.

54.     The statements referenced in ¶¶ 28-53 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Mallinckrodt had overstated its financial strength, including purported enhancements to its liquidity and balance sheet, following its emergence from Chapter 11 bankruptcy protection; (ii) accordingly, the Company overstated its ability to timely make one or more payments due to the Trust for the Opioid Settlement; (iii) all the foregoing negatively impacted Mallinckrodt's ability and/or willingness to timely meet interest payment obligations on certain bonds; (iv) as a result of all the foregoing, the Company was at an increased risk of having to again file for Chapter 11 bankruptcy protection; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

55.    On June 2, 2023, during after-market hours, and less than a month since Mallinckrodt reaffirmed its full-year 2023 financial guidance, the WSJ published an article, titled "Mallinckrodt Explores Repeat Bankruptcy as $200 Million Opioid Payment Comes Due", which stated, in relevant part :

> Drugmaker Mallinckrodt is considering options including a repeat bankruptcy filing after emerging from chapter 11 last year as a $200 million opioid settlement payment comes due within weeks, people familiar with the matter said.
>
> The Dublin-based drugmaker is required to make the payment to an opioid-victims compensation trust by mid-June under a $1.7 billion settlement as part of its chapter 11 exit plan. A lender group advised by law firm Gibson Dunn & Crutcher has been in discussions with the company about how it can deal with the payment and possibly restructure its obligations, people familiar with the matter said.
>
> The company, which has faced financial headwinds since exiting chapter 11, is considering another bankruptcy filing and other possible options, the people said. Mallinckrodt hasn't decided on any path and could try to negotiate the opioid payment to avoid filing for bankruptcy, they said.
>
> A spokesman for Mallinckrodt declined to comment.

56.    On this news, Mallinckrodt's ordinary share price fell $0.98 per share, or 40%, to close at $1.47 per share on June 5, 2023, the next trading day.

57.    Then, on June 15, 2023, during pre-market hours, Mallinckrodt filed a current report on Form 8-K with the SEC, disclosing that the Company had

determined not to make interest payments on two bonds due that day and may need to file for bankruptcy.  Specifically, the filing stated, in relevant part:

> As previously disclosed, the Board of Directors of Mallinckrodt plc (the "Company") is actively evaluating the Company's financial situation and considering options, including transactions that have been proposed by holders of various series of the Company's indebtedness and other Company stakeholders, as well as the viewpoints of the various parties in interest. The Company continues to analyze its situation and engage with various stakeholders. There can be no assurance of the outcome of this process, ***including whether or not the Company may make a filing in the near term or later under the U.S. Bankruptcy Code or analogous foreign bankruptcy or insolvency laws***.

> As the Board continues to evaluate alternatives, on June 15, 2023, ***the Company determined not to make interest payments that were due that date on its (i) 11.500% First Lien Senior Secured Notes due 2028 (the "2028 First Lien Notes") and (ii) 10.000% Second Lien Senior Secured Notes due 2029 (the "2029 Second Lien Notes")***.

> * * *

> The failure to make the interest payments due on June 15, 2023, under each series of notes will constitute an event of default for such series if such failure continues unremedied for a period of 30 days. If an event of default occurs under either series as a result of the non-payment of interest, either the trustee under the applicable indenture by notice to the Issuers or holders of at least 25% in principal amount of the outstanding series by notice to the Issuers may declare the principal of, premium (which would include a prepayment premium), and accrued but unpaid interest on all of such series of notes to be due and payable. The occurrence of this event of default under either series of notes, if such series of notes is not discharged and such event of default is not cured promptly, would cause a cross-default under the Company's first lien senior secured term loans and revolving asset-based credit facility that would permit the applicable lenders to accelerate such indebtedness and terminate any applicable commitments (as applicable). Acceleration of either series of notes would respectively

cause a cross-default under the Company's other secured notes and its opioid settlement obligations that would permit the holders of such notes or the opioid trust to accelerate the applicable obligations.

***The determination not to make the interest payments due June 15, 2023, under the 2028 First Lien Notes and the 2029 Second Lien Notes reflects that the Company continues to consider potential alternatives, including filing for protection under the U.S. Bankruptcy Code***, but no definitive decision has been made and the Company continues to engage in discussions with various stakeholders.

(Emphases added.)

58.     On this news, Mallinckrodt's ordinary share price fell $0.39 per share, or 30.95%, to close at $0.87 per share on June 15, 2023.

### Post-Class Period Developments

59.     On June 16, 2023, Mallinckrodt filed a current report on Form 8-K with the SEC, disclosing that the Company and the Trust had agreed to extend the deadline for the Company's $200 million payment to the Trust for the Opioid Settlement from June 16, 2023 to June 23, 2023, while reiterating that the Company may need to file for bankruptcy.  Specifically, that filing stated, in relevant part:

As previously disclosed, the Board of Directors (the "Board") of Mallinckrodt plc (the "Company") is engaged in discussions with various stakeholders, including parties holding substantial positions across the Company's capital structure and representatives of the Opioid Master Disbursement Trust II (the "Trust"). The Board is actively evaluating the Company's capital needs in light of its obligations under its opioid settlement and its long-term debt, and is considering options, including transactions that have been proposed by holders of various series of the Company's indebtedness and other Company stakeholders, as well as the viewpoints of various parties in interest.

In connection with these ongoing discussions, on June 15, 2023, the Company, certain subsidiaries of the Company and the Trust (collectively, the "Parties") entered into Amendment No. 1 (the "Amendment") to that certain Opioid Deferred Cash Payments Agreement, dated as of June 16, 2022, among the Parties . . . . ***The Amendment extends to June 23, 2023, from June 16, 2023, the date on which a $200 million payment is required to be made to the Trust.***

\* \* \*

The Company continues to analyze its situation and engage with various stakeholders, including representatives of the Trust. There can be no assurance of the outcome of this process, ***including whether or not the Company may make a filing in the near term or later under the U.S. Bankruptcy Code or analogous foreign bankruptcy or insolvency laws***.

(Emphases added.)

60.    Then, on June 23, 2023, Mallinckrodt filed a current report on Form 8-K with the SEC, disclosing that the Company and the Trust had again agreed to extend the deadline for the Company's $200 million payment to the Trust for the Opioid Settlement from June 23, 2023 to June 30, 2023, while reiterating that the Company may still need to file for bankruptcy.  Specifically, that filing stated, in relevant part:

On June 22, 2023, pursuant to the Amendment, ***the Trust provided written notice that it was further extending the due date of the Opioid Deferred Cash Payment from June 23, 2023 to June 30, 2023***.

\* \* \*

The Company continues to analyze its situation and engage with various stakeholders, including representatives of the Trust. There can be no assurance of the outcome of this process, ***including whether or***

*not the Company may make a filing in the near term or later under
the U.S. Bankruptcy Code or analogous foreign bankruptcy or
insolvency laws.*

(Emphases added.)

61.    As a result of Defendants' wrongful acts and omissions, and the
precipitous decline in the market value of the Company's securities, Plaintiffs and
other Class members have suffered significant losses and damages.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

62.    Plaintiffs bring this action as a class action pursuant to Federal Rule of
Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who
purchased or otherwise acquired Mallinckrodt securities during the Class Period (the
"Class"); and were damaged upon the revelation of the alleged corrective
disclosures.  Excluded from the Class are Defendants herein, the officers and
directors of the Company, at all relevant times, members of their immediate families
and their legal representatives, heirs, successors or assigns and any entity in which
Defendants have or had a controlling interest.

63.    The members of the Class are so numerous that joinder of all members
is impracticable.  Throughout the Class Period, Mallinckrodt securities were actively
traded on the NYSE and OTC.  While the exact number of Class members is
unknown to Plaintiffs at this time and can be ascertained only through appropriate
discovery, Plaintiffs believe that there are hundreds or thousands of members in the

proposed Class. Record owners and other members of the Class may be identified from records maintained by Mallinckrodt or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

64.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

65.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

66.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Mallinckrodt;

- whether the Individual Defendants caused Mallinckrodt to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

26

- whether the prices of Mallinckrodt securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

67. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

68. Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine, in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Mallinckrodt securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and OTC and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiffs and members of the Class purchased, acquired and/or sold Mallinckrodt securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

69.     Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

70.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

71.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

72.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

73.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a

fraud and deceit upon Plaintiffs and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Mallinckrodt securities; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire Mallinckrodt securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

74.    Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Mallinckrodt securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Mallinckrodt's finances and business prospects.

75.     By virtue of their positions at Mallinckrodt, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

76.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Mallinckrodt, the Individual Defendants had knowledge of the details of Mallinckrodt's internal affairs.

77.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Mallinckrodt.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Mallinckrodt's businesses, operations,

future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Mallinckrodt securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Mallinckrodt's business and financial condition which were concealed by Defendants, Plaintiffs and the other members of the Class purchased or otherwise acquired Mallinckrodt securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities, and/or upon statements disseminated by Defendants, and were damaged thereby.

78. During the Class Period, Mallinckrodt securities were traded on an active and efficient market. Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued, or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Mallinckrodt securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of Mallinckrodt securities was substantially lower than the prices paid by Plaintiffs and the other

members of the Class.  The market price of Mallinckrodt securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

79.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

80.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

81.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

82.    During the Class Period, the Individual Defendants participated in the operation and management of Mallinckrodt, and conducted and participated, directly and indirectly, in the conduct of Mallinckrodt's business affairs.  Because of their senior positions, they knew the adverse non-public information about Mallinckrodt's misstatement of income and expenses and false financial statements.

83.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Mallinckrodt's financial condition and results of operations, and to correct promptly any public statements issued by Mallinckrodt which had become materially false or misleading.

84.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Mallinckrodt disseminated in the marketplace during the Class Period concerning Mallinckrodt's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Mallinckrodt to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Mallinckrodt within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Mallinckrodt securities.

85.    Each of the Individual Defendants, therefore, acted as a controlling person of Mallinckrodt.  By reason of their senior management positions and/or being directors of Mallinckrodt, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Mallinckrodt to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants

exercised control over the general operations of Mallinckrodt and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

86.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Mallinckrodt.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives;

B.    Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees, and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

Dated:  July 7, 2023              Respectfully submitted,

                                  POMERANTZ LLP

                                  */s/ Thomas H. Przybylowski*
                                  Thomas H. Przybylowski
                                  Jeremy A. Lieberman
                                  (*pro hac vice* application forthcoming)
                                  J. Alexander Hood II
                                  (*pro hac vice* application forthcoming)
                                  600 Third Avenue, 20th Floor
                                  New York, New York 10016
                                  Telephone: (212) 661-1100
                                  Facsimile: (917) 463-1044
                                  tprzybylowski@pomlaw.com
                                  jalieberman@pomlaw.com
                                  ahood@pomlaw.com

                                  DJS LAW GROUP LLP
                                  David J. Schwartz
                                  274 White Plains Road, Suite 1
                                  Eastchester, New York 10709
                                  Telephone: (914) 206-9742
                                  david@djslawllp.com

                                  *Attorneys for Plaintiffs*

## CERTIFICATION PURSUANT
## <u>TO FEDERAL SECURITIES LAWS</u>

1.      I, Michael Gorzynski, on behalf of Continental General Insurance Company ("CGIC"), as Executive Chairman, with authority to bind CGIC and enter into litigation on its behalf, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Mallinckrodt plc ("Mallinckrodt") and authorize the filing of a comparable complaint on behalf of CGIC.

3.      CGIC did not purchase or acquire Mallinckrodt securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      CGIC is willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Mallinckrodt securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of CGIC's transactions in Mallinckrodt securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, CGIC has not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      CGIC agrees not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond its pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed  _7/6/2023_____
              **(Date)**

DocuSigned by:

_Michael Gorzynski_____
DA00988658FC461...
**(Signature)**

Michael Gorzynski
Executive Chairman
Continental General Insurance Company

**Mallinckrodt plc (MNK)**                                    **Continental General Insurance Company**

**List of Purchases and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 11/2/2022 | 318 | $14.7000 |
| Purchase | 11/7/2022 | 99,350 | $14.6793 |
| Purchase | 5/19/2023 | 78,154 | $3.4998 |

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, Michael Gorzynski, on behalf of Percy Rockdale, LLC ("PR"), as Manager, with authority to bind PR and enter into litigation on its behalf, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Mallinckrodt plc ("Mallinckrodt") and authorize the filing of a comparable complaint on behalf of PR.

3.      PR did not purchase or acquire Mallinckrodt securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      PR is willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Mallinckrodt securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of PR's transactions in Mallinckrodt securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, PR has not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      PR agrees not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond its pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

DocuSign Envelope ID: 6D43BF06-3B3D-48C0-837C-DC8836DD4C58

8.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Executed** _____7/6/2023_____
              **(Date)**



_____
                  **(Signature)**

Michael Gorzynski
Manager
Percy Rockdale, LLC

**Mallinckrodt plc (MNK)**                                                      **Percy Rockdale**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 10/27/2022 | 1,000 | $16.2750 |
| Purchase | 10/31/2022 | 5,000 | $15.5707 |
| Purchase | 11/1/2022 | 799 | $15.0675 |
| Purchase | 11/1/2022 | 1,000 | $15.1150 |
| Purchase | 11/2/2022 | 1,000 | $14.8000 |
| Purchase | 11/2/2022 | 5,000 | $14.8000 |
| Purchase | 11/2/2022 | 1,000 | $14.7650 |
| Purchase | 11/3/2022 | 1,000 | $14.3250 |
| Purchase | 11/4/2022 | 5,000 | $15.2500 |
| Purchase | 11/4/2022 | 200 | $14.7500 |
| Purchase | 11/10/2022 | 6,505 | $13.4138 |
| Purchase | 1/30/2023 | 10,000 | $7.4700 |
| Purchase | 2/2/2023 | 10,000 | $7.6600 |
| Purchase | 2/3/2023 | 10,000 | $7.5200 |
| Purchase | 2/3/2023 | 10,000 | $7.5099 |
| Purchase | 5/19/2023 | 10,000 | $1.4981 |
| Purchase | 5/19/2023 | 10,000 | $1.4973 |
| Purchase | 5/19/2023 | 14,006 | $1.5378 |
| Purchase | 5/19/2023 | 47,038 | $1.5469 |
| Purchase | 5/19/2023 | 13,460 | $1.7497 |
| Purchase | 5/19/2023 | 11,650 | $2.3800 |
| Purchase | 5/19/2023 | 40,736 | $2.4955 |
| Purchase | 5/19/2023 | 47,614 | $2.5473 |
| Purchase | 5/19/2023 | 100,000 | $2.5690 |
| Purchase | 5/19/2023 | 22,307 | $2.4164 |
| Purchase | 5/19/2023 | 14,393 | $2.3798 |
| Purchase | 5/19/2023 | 20,543 | $2.4954 |
| Purchase | 5/19/2023 | 4,632 | $2.8361 |
| Purchase | 5/19/2023 | 6,299 | $2.9800 |
| Sale | 11/10/2022 | (22) | $13.1750 |
| Sale | 11/10/2022 | (5,000) | $13.0052 |
| Sale | 11/10/2022 | (5,000) | $13.0060 |
| Sale | 11/10/2022 | (5,000) | $13.0113 |
| Sale | 11/10/2022 | (5,000) | $13.0057 |
| Sale | 11/10/2022 | (7,033) | $13.0024 |
| Sale | 11/10/2022 | (449) | $12.9250 |
| Sale | 2/24/2023 | (2,478) | $9.2300 |
| Sale | 4/27/2023 | (200) | $5.5750 |