**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| CONTINENTAL GENERAL INSURANCE COMPANY and PERCY ROCKDALE, LLC, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SIGURDUR OLAFSSON, BRYAN M. REASONS, and PAUL BISARO,<br><br>Defendants. | Case No. 3:23-cv-03662-ZNQ-JBD<br><br><u>Oral Argument Requested</u> |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.      PLAINTIFFS' RELIANCE ON MALLINCKRODT'S RETENTION OF GUGGENHEIM
        IS MISPLACED .................................................................................................... 2

II.     THE OPPOSITION DOES NOT AMELIORATE THE AMENDED COMPLAINT'S
        FAILURE TO PLEAD FALSITY OR SCIENTER ........................................... 4

        A.      Plaintiffs Do Not Identify Any Actionable False Statement ................................. 4

                1.      Plaintiffs Mischaracterize Bankruptcy Testimony and SEC Filings to Try to
                        Plead Falsity ...................................................................................................... 4

                2.      Defendants' Generic Corporate Optimism Is Inactionable ......................... 5

                3.      The Opposition Does Not Rebut Defendants' Showing That Many Alleged
                        Misstatements Are Protected Forward-Looking Statements ...................... 6

                4.      The Opposition Does Not Rebut Defendants' Showing That *Omnicare*
                        Protects Defendants' Honestly Held Opinions .......................................... 8

        B.      Plaintiffs' Allegations Do Not Give Rise to a Strong Inference of Scienter .......... 9

                1.      The Opposition Confirms That the Amended Complaint's Conclusory
                        Allegations Are Insufficient ......................................................................... 9

                2.      Mallinckrodt's Bankruptcy-Related Retention Plans Do Not Create a Strong
                        Inference of Scienter. .................................................................................. 11

                3.      Plaintiffs Cannot Rely on Corporate Scienter or Core Operations. .......... 11

CONCLUSION ................................................................................................................... 12

ii

## TABLE OF AUTHORITIES

**Cases**

*In re Aetna, Inc. Sec. Litig.*,
617 F.3d 272 (3d Cir. 2010)...........................................................................................5

*In re Amarin Corp. PLC*,
2015 WL 3954190 (D.N.J. June 29, 2015) ....................................................................11

*In re Campbell Soup Co. Sec. Litig.*,
2020 WL 7022655 (D.N.J. Nov. 30, 2020) ...................................................................12

*In re Eros Int'l PLC Sec. Litig.*,
2021 WL 1560728 (D.N.J. Apr. 20, 2021) .....................................................................9

*In re Gen. Elec. Co. Sec. Litig.*,
857 F. Supp. 2d 367 (S.D.N.Y. 2012)...........................................................................10

*In re Honeywell Int'l, Inc. Sec. Litig.*,
182 F. Supp. 2d 414 (D.N.J. 2002) ..............................................................................5, 6

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
119 F.3d 1070 (3d Cir.1997)...........................................................................................9

*Nguyen v. Att'y Gen. of New Jersey*,
832 F.3d 455, 466 (3d Cir. 2016).....................................................................................9

*Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015).........................................................................................................8

*Roofer's Pension Fund v. Papa*,
687 F. Supp. 3d 604 (D.N.J. 2023) ...............................................................................11

*In re Urban Outfitters, Inc. Sec. Litig.*,
103 F. Supp. 3d 635 (E.D. Pa. 2015) ............................................................................10

**Statute**

Private Securities Litigation Reform Act of 1995 ................................................................ *passim*

**Rule**

Federal Rule of Civil Procedure 12(b)(6) ...............................................................................2

## PRELIMINARY STATEMENT

Plaintiffs' Opposition confirms that the Amended Complaint does not plead a viable securities fraud claim because Plaintiffs have conceded three critical and dispositive points:

- The Amended Complaint does not allege that Mallinckrodt[1] or the Defendants reported inaccurate financial results. Plaintiffs accept that Mallinckrodt accurately disclosed all of its sales, costs, profits, and other financial performance metrics in every quarter during the Class Period.

- The Amended Complaint does not challenge the good faith or accuracy of the FY 2022 guidance that Mallinckrodt provided to the market on August 11, 2022 after emerging from the 2020 Bankruptcy, or the FY 2023 guidance that Mallinckrodt issued on February 28, 2023. Plaintiffs accept that this guidance was forward-looking and accompanied by meaningful cautionary risk disclosures and therefore protected by the Reform Act's safe harbor provision.

- The Amended Complaint does not assert that Mallinckrodt failed to disclose the substantial liabilities it continued to owe after emerging from the 2020 Bankruptcy. Plaintiffs accept that Mallinckrodt fully and repeatedly informed investors that: (i) it owed $1.75 billion in connection with the Opioid Cases and the CMS Matter; (ii) it owed $3.606 billion to first-lien and second-lien creditors; and (iii) $817.9 million of the $3.606 billion was due in April 2025.

Given Plaintiffs' concession that during the entirety of the Class Period, Mallinckrodt fully and accurately disclosed how much money it was making, how much money it expected to make, and how much money it owed (and exactly when it owed that money), there is no viable securities fraud case here. No further analysis is required.

The Court should dismiss the Amended Complaint because Plaintiffs do not identify (i) a material statement of fact by Defendants that is false or misleading on its face, or (ii) a statement that is accurate on its face but misleading by reason of omitting a material and contrary fact. Instead, Plaintiffs argue only that Defendants should have predicted doom when disclosing Mallinckrodt's financial results and informed investors that a second Chapter 11 case was

---

[1]     Unless otherwise noted, all defined terms herein carry the same definitions as in Defendants' moving brief, ECF No. 19-1.

1

inevitable.  The Reform Act mandates dismissal where, as here, a plaintiff, with the benefit of hindsight, merely quibbles with how a public company characterized its accurate financial results.

When Plaintiffs' Opposition does bother to challenge statements that Defendants made, those statements are all:  (i) forward-looking statements protected by the Reform Act's safe harbor; (ii) at most, immaterial corporate puffery; or (iii) Defendants' good faith opinions.  None can form the basis of a securities fraud complaint.  And even if Plaintiffs had identified an actionable false statement, the Opposition confirms that the Amended Complaint does not plead facts giving rise to a strong inference of scienter:  the Opposition argues that Defendants knew Mallinckrodt was doomed to fail from the day it emerged from the 2020 Bankruptcy (and therefore that their equity would be wiped out), but wagered that, after filing for and emerging from the 2023 Bankruptcy, they would not be fired and instead would be awarded incentive compensation and new equity.  This scienter theory is neither cogent nor compelling.

Plaintiffs' Opposition, like the Amended Complaint, frequently paraphrases or excerpts Mallinckrodt's SEC filings and publicly available documents from the 2020 Bankruptcy in a misleading manner.  A fair reading of those documents shows that the Opposition arguments have no merit and, ultimately, that Defendants never "touted" Mallinckrodt as "thriving" but instead accurately disclosed the Company's financial results while providing balanced and cautiously optimistic commentary on its future risks and business potential.  The Court should dismiss this case pursuant to Rule 12(b)(6) and the Reform Act.

## ARGUMENT

### I.   PLAINTIFFS' RELIANCE ON MALLINCKRODT'S RETENTION OF GUGGENHEIM IS MISPLACED.

Plaintiffs' Opposition points to one fact and one fact only that was allegedly known to Mallinckrodt but not known to investors during the Class Period:  the Company's retention of

2

Guggenheim Securities, LLC on October 1, 2022. Specifically, Plaintiffs argue that, after emerging from the 2020 Bankruptcy in June 2022, Mallinckrodt "reengaged its bankruptcy advisor" Guggenheim "to help evaluate 'strategic alternatives'" and that "strategic alternatives" means "a potential return to bankruptcy." Opp. at 2, *see also id*. at 8, 13, 18–19, 25–26, 29, 33, 35, 37, 39. Plaintiffs rely on paragraphs 133 and 134 in the Amended Complaint, which in turn refer to unidentified "filings" from the 2023 Bankruptcy. *Id.* Those "filings" actually refer to just a single paragraph from a single declaration from by Brendan Hayes, a Senior Managing Director at Guggenheim, in support of the 2023 Plan, which states in full:

> Guggenheim Securities has been engaged as investment banker to the Debtors, and members of my team and I have been working closely with the Debtors, since October 1, 2022. Since being engaged by the Debtors, Guggenheim Securities has rendered investment banking advisory services to the Debtors in connection with, among other things, the Debtors' evaluation of their strategic alternatives. Additionally, Guggenheim Securities has worked closely with the Debtors' management and other professionals retained by the Debtors with respect to these strategic alternatives and has become acquainted with the Debtors' capital structure and business.

Reply Wuertz Decl., Ex. 20 (10/2/23 Hayes Decl.) at ¶ 6. Nothing in this text suggests that, as Plaintiffs argue, Guggenheim was advising Mallinckrodt on a second Chapter 11 case since October 1, 2022. The Hayes Declaration states only that Guggenheim rendered "investment banking advisory services" to Mallinckrodt as it considered "strategic alternatives." Investment banks regularly provide a variety of "advisory services," while "strategic alternatives" commonly refers to, among other things, mergers and acquisitions, asset sales, and debt renegotiations.

Moreover, the very next paragraph in the Hayes Declaration, which Plaintiffs fail to cite, clarifies when Guggenheim began advising Mallinckrodt on a potential second Chapter 11 case:

> In my role as investment banker to the Debtors, I assisted the Debtors, along with their other advisors, with the negotiations of the key economic terms of the Restructuring Support Agreement and the [2023 Plan of Reorganization]. Those negotiations were conducted at arm's-length over several months, **from the initial**

3

**outreach by creditors to Mallinckrodt in May 2023 up until the execution of the Restructuring Support Agreement in late August 2023**.

*Id.* at ¶ 7 (emphasis added).  As shown in Defendants' moving brief, and as ignored by the Opposition, this "initial outreach by creditors" in May 2023 was via letters that Mallinckrodt first received on May 17, 2023.  *See* Mov. Br. at 11–12.  May 17, 2023 is **after** the date of the last disclosures that Plaintiffs challenge – the May 9, 2023 10-Q and earnings call. *Id.* at 10–11.  The Reform Act does not permit "fraud by hindsight" claims; Plaintiffs cannot show that May 9, 2023 disclosures were false by pointing to events that occurred beginning on May 17, 2023.

## II.    THE OPPOSITION DOES NOT AMELIORATE THE AMENDED COMPLAINT'S FAILURE TO PLEAD FALSITY OR SCIENTER.

The Opposition largely ignores Defendants' moving papers.  Defendants reaffirm the arguments contained in their moving brief that:  (1) the alleged misstatements are inactionable as forward-looking statements, puffery, and/or opinions; and (2) Plaintiffs have not plead **facts** that support a strong inference of scienter, as the Amended Complaint lacks the hallmarks of scienter, like confidential witnesses or insider stock sales.  Defendants address below certain of Plaintiffs' arguments that misconstrue facts or case law.

### A.    Plaintiffs Do Not Identify Any Actionable False Statement.

#### 1.    Plaintiffs Mischaracterize Bankruptcy Testimony and SEC Filings to Try to Plead Falsity.

Having conceded that Mallinckrodt's financial disclosures during the Class Period were accurate, Plaintiffs pivot to argue that Defendants omitted facts concerning "the gap between what the Company needed to survive and its guidance and actual income."  Opp. at 15–18.  This argument, however, hinges on the mischaracterization of testimony by Randall Eisenberg[2] and

---

[2]    Mr. Eisenberg was the lead engagement partner for AlixPartners, financial advisor and restructuring consultant to Mallinckrodt, **not** Mallinckrodt's CRO, as Plaintiffs allege.  Reply

4

subsequent SEC filings.  Mr. Eisenberg testified that the Plan was feasible based primarily on those financial projections, which were "management's **best estimate** as to what the anticipated performance will be at the company post-emergence . . . ."  *See* Reply Wuertz Decl., Ex. 21 (12/9/21 Hearing Tr.) at 196–98 (emphasis added).  Mr. Eisenberg did not testify that achieving the financial results in the March 2021 and September 2021 projections included in the Company's disclosure statement "was necessary for the Company to remain solvent."  Opp. at 3, 6, 32, 35.

Mallinckrodt also did not tell investors to "disregard the CRO's testimony."  *Id.* at 3, 32, 39.  In its 2022 10-K, Mallinckrodt's bankruptcy-related risk factors included a warning that:

> [i]n connection with the disclosure statement . . . we prepared projected financial information for various reasons, including to demonstrate to the Bankruptcy Court the feasibility of the Plan and our ability to continue operations upon our emergence from Chapter 11.  Those projections were prepared solely for the purposes stated therein and have not been, and will not be, updated on an ongoing basis and should not be relied upon by investors.  At the time they were prepared, the projections reflected numerous assumptions concerning our anticipated future performance with respect to then prevailing and anticipated market and economic conditions that were and remain beyond our control and that may not materialize.

Wuertz Decl. Ex. 10 (2022 10-K) at 32.

### 2.      Defendants' Generic Corporate Optimism Is Inactionable.

The Opposition, like the Amended Complaint, is premised on the theory that Defendants should have been more pessimistic about the Company's future.[3]  Plaintiffs rely heavily on *In re Honeywell International, Inc. Securities Litigation*, 182 F. Supp. 2d 414 (D.N.J. 2002), but the allegations in that case differ significantly.  In *In re Honeywell*, the plaintiffs alleged that the defendants "deliberately falsified Honeywell's financial statements" including by creating "phony

---

Wuertz Decl., Ex. 21 (12/9/21 Hearing Tr.) at 187:3–5.  The full transcript of Mr. Eisenberg's testimony is available at ECF Nos. 5759–60, *Mallinckrodt plc*, No. 20-12522 (Bankr. D. Del.).

[3]      Plaintiffs are wrong that repeated statements cannot be puffery.  *See* Opp. at 20; *see In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 275, 284 (3d Cir. 2010).

revenue," to conceal a failed merger. *Id.* at 419–20. The court found that Honeywell's positive statements were actionable because "as one difficulty followed another . . . defendants never so much tempered this optimism." *Id.* at 426. Here, there no allegations that Mallinckrodt falsified financial statements to cover up poor performance; to the contrary, Mallinckrodt accurately disclosed to investors its declining financial results and challenges, the exact kind of "temper[ing]" the *Honeywell* Court endorsed.[4] *See* Mov. Br. at 4–11.

### 3. The Opposition Does Not Rebut Defendants' Showing That Many Alleged Misstatements Are Protected Forward-Looking Statements.

Defendants' moving brief explained that many of the alleged misstatements are forward-looking statements protected by the Reform Act's safe harbor. Mov. Br. at 16–18. Plaintiffs counter that Mallinckrodt "stated definitively" that it would make the June 2023 payment to the Opioid Trust. Opp. at 26–27 (citing AC ¶¶ 149, 150, 159, 168). But the filings referenced in those four cited paragraphs contain a general summary of the settlement terms and do not comment on Mallinckrodt's ability to make, or commitment to making, the June 2023 payment. *See* Wuertz Decl., Ex. 3 (8/11/22 10-Q) at 9–10; Ex. 6 (11/8/22 10-Q) at 10; Ex. 10 (3/3/23 10-K) at 52, 75.

Plaintiffs also point repeatedly to a statement by Mr. Reasons in a February 28, 2023 earnings call as "assuring" or "touting" to investors that Mallinckrodt's liquidity position was so strong that a second Chapter 11 case could never happen. Opp. at 2, 14, 25–26, 34. The statement at issue, in full and in context, is:

---

[4]    *In re Signet Jewelers Ltd. Securities Litigation* is no help. Opp. at 20 (citing 2018 WL 6167889 (S.D.N.Y. 2018)). The court there found statements about Signet's credit portfolio to be more than puffery because Signet's statements were often "made in response to direct questions" and part of every Signet presentation. *Id.* at *12. "Once Defendants conveyed to the market with dogged insistence that Signet's credit portfolio was carefully managed and of a high quality, they had a duty to speak about any developments so as to render their earlier statements not misleading." *Id.* Here, Defendants' statements are quintessential puffery, describing Mallinckrodt's "strong future" and stating that the Company "remain[s] on track." *See* Mov. Br. at 19.

**[Analyst Question]:**    And the second question is on the opioid trust and prepayment.  I believe there was an 18-month extension opportunity to prepay that.  I wanted to know how you guys are thinking about that in concurrence with opportunities to buyback debt, and how you think about that cost to capital?

**[Clarification by Mallinckrodt's Chief Investor Relations Officer]:**  Yes, sure.  So it's a little difficult to hear you, but I think maybe just to summarize, the question was, with respect to the opioid trust and the possibility of prepayment and really just broadly thinking about capital allocation.  Bryan.

**[Answer from Bryan Reasons]:**  Yes.  I mean great question.  Look, when we negotiated that, we had -- we put in an 18-month period that we could prepay that at a significant discount.  Clearly, the capital markets shifted since then.  So we still have that opportunity, but we're looking at the capital structure holistically, monitoring the capital markets.  So from a capital allocation, if that's the best return on our use of liquidity, we'll do that.  But certainly, delevering in other areas of our cap structure have become very attractive as well right now.  So -- but we have 18 months from emergence to capture that discount.

Wuertz Decl., Ex. 8 (2/28/23 Earnings Call Transcript) at 11.

Contrary to Plaintiffs' spin, Mr. Reasons confirmed only that the analyst was correct that Mallinckrodt had a contractual right to prepay certain amounts during an 18-month window.  *See* Reply Wuertz Decl., Ex. 22 (2020 Plan) at ¶ 337.  Mr. Reasons did not suggest that Mallinckrodt was performing well and likely to exercise its prepayment right.  To the contrary, Mr. Reasons stated that "the capital markets have shifted" such that "other areas of our cap structure have become very attractive."  Wuertz Decl., Ex. 8 (2/28/23 Earnings Tr.) at 11.  Mr. Reasons neither "assur[ed]" investors of the Company's financial health nor "tout[ed]" anything at all.

Finally, *In re Stone & Webster, Inc., Securities Litigation* is inapposite.  Opp. at 21 (citing 414 F.3d 187, 213 (1st Cir. 2005)).  There, the First Circuit found the statement that the company "has on hand . . . sufficient sources of funds to meet its anticipated . . . needs" contained **both** present and forward-looking portions.  *Id.* at 207.  The court found the latter portion of the statement – that the funds were sufficient to meet the company's "anticipated . . . needs" – to be a forward-looking statement.  *Id.* at 212–13.  Here, Mallinckrodt's statement that its "sources of

7

liquidity are adequate to fund our operations for the next twelve months and foreseeable future" is akin to that latter, forward-looking portion of the *Stone & Webster* statement, not the portion about funds "on hand" that the First Circuit found to be a statement about the present. *See id.*

### 4. The Opposition Does Not Rebut Defendants' Showing That *Omnicare* Protects Defendants' Honestly Held Opinions.

Defendants' moving papers explained that the opinions Plaintiffs challenge are inactionable. *See* Mov. Br. at 19–22 (citing *Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015)). In opposition, Plaintiffs argue that statements concerning liquidity, cash flow, and cash on hand are statements of fact, but this argument fails because Plaintiffs **do not allege** that Defendants inaccurately stated the Company's liquidity, cash flow, and cash on hand. *See* Mov. Br. at 15. Plaintiffs also argue that Defendants knew such statements were false when made, but the retention of Guggenheim is the only fact Plaintiffs allege was known to Mallinckrodt but not the market. Opp. at 24–25. As discussed above, Plaintiffs mischaracterize Guggenheim's retention and scope of work. *See* Section I, *supra*, at 2–3.

Furthermore, each of Plaintiffs' cited cases on opinion statements is inapposite.[5]

- In *Nash v. Qualtrics International Inc.*, the court found that the statement that the company was not engaged in an "active sales process" was not an opinion because it was a factual statement "about the past and/or present" and contradicted by the allegation that the company had been engaged in lengthy talks about selling the company. 2024 WL 231870, at \*3 (D. Del. 2024). Plaintiffs here fail to identify facts rendering false any of Defendants' opinions about the future. *See* Mov. Br. at 24–25.

- In *Shapiro v. UJB Financial Corp.*, a pre-*Omnicare* case, the court determined that characterizations of a management practice (such as characterizations of underwriting practices as "conservative" and "prudent") can be actionable if a defendant "intentionally or recklessly omits certain facts contradicting the[] representations." 964 F.2d 272, 282 (3d Cir. 1992). The court did not determine

---

[5] *De Vito v. Liquid Holdings Group., Inc.* is irrelevant because the defendants in that case did not make an opinion argument. 2018 WL 6891832, at \*7, \*45 (D.N.J. Dec. 31, 2018).

whether such a showing of knowledge or recklessness was made in *Shapiro*. And Plaintiffs have not done so here. *See* Mov. Br. at 23–29.

- Contrary to Plaintiffs' characterization, *In re Eros Int'l PLC Securities Litigation* found that the company's statements about intangible assets were opinions, but because the plaintiffs in *Eros* sufficiently alleged the omission of material information that conflicted with those opinions, the opinions were actionable. 2021 WL 1560728, at *2, *8–9 (D.N.J. Apr. 20, 2021). Here, the Amended Complaint does not adequately allege such omissions. Mov. Br. at 21–22.[6]

### B.      Plaintiffs' Allegations Do Not Give Rise to a Strong Inference of Scienter.

#### 1.      The Opposition Confirms That the Amended Complaint's Conclusory Allegations Are Insufficient.

Defendants argued in their moving brief that Plaintiffs' conclusory allegations of Defendants' knowledge are insufficient to allege scienter under the Reform Act. In response, Plaintiffs raise a smattering of different arguments, most of which do not meaningfully engage with Defendants' arguments and none of which save Plaintiffs' deficient scienter allegations.

First, Plaintiffs argue that Defendants were reckless because they knew Mallinckrodt's guidance fell below what the Company's CRO testified was "necessary" to remain solvent, but told investors to "disregard" that testimony. Opp. at 32. As explained above, this mischaracterizes Mr. Eisenberg's testimony and Mallinckrodt's SEC filings. *See* Section II.A.1, *supra* at 4–5.[7]

Second, Plaintiffs insist that the August 2023 Goodson Declaration shows that the

---

[6]      Plaintiffs argue that Defendants waived certain arguments, Opp. at 29–30, but the cited case, *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070 (3d Cir. 1997), discusses this question in the context of preservation of arguments **on appeal** and is thus is not relevant. *See Nguyen v. Att'y Gen. of New Jersey*, 832 F.3d 455, 466 (3d Cir. 2016).

[7]      Plaintiffs' description of *Pizzuto v. Homology Medicines, Inc.* is wrong. Opp. at 32 (citing 2024 WL 1436025 (D. Mass. Mar. 31, 2024)). In *Pizzuto*, a clinical trial patient made a public post about her treatment. A research analyst emailed it to the company's chief communications officer, who replied that, "nothing fundamental changed for [Homology] but unfortunately, our stock price." *Pizzuto*, 2024 WL 1436025 at *10. The court found the reply to be immaterial puffery. *Id.* The court did not conclude that "telling press to ignore partial revelation of truth supports scienter." Opp. at 32.

Company was insolvent by February 2023.  Opp. at 32–33.  Far from an "immaterial typo," *id.* at 33, Plaintiffs' inaccurate presentation of the Goodson Declaration changed its meaning by changing the verb tense.  Read accurately, the August 2023 Goodson Declaration states that the Company "is presently insolvent" in August 2023.  *See* Reply Wuertz Decl., Ex. 23 (8/28/23 Goodson Decl.) at ¶ 21.  It says nothing about February 2023.

Third, Plaintiffs argue that the timing of Mallinckrodt's May 9, 2023 10-Q and earnings release and the announcement of the potential bankruptcy suggests scienter.  Once again, Plaintiffs ignore the May 2023 creditor letters.  Mov. Br. at 11.  Per the Goodson Declaration, the receipt of the creditor letters prompted Mallinckrodt to consider its operation as a going concern.  *See* Reply Wuertz Decl., Ex. 23 (8/28/23 Goodson Decl.) at ¶¶ 26, 89.  Defendants cannot have known a second bankruptcy was likely on May 9 without knowing of the then-future May 17 creditor letters.

Fourth, Plaintiffs argue scienter can be inferred because Defendants "repeatedly" spoke about its finances and debt obligations, Opp. at 34, but that argument disregards that all companies must discuss these topics in their quarterly financial reporting.[8]

Fifth, Plaintiffs rely on the SOX certifications to bolster scienter, but also acknowledge that SOX certifications alone do not support a strong inference scienter.  *Id*. at 34–35.

Sixth, Plaintiffs claim they do not engage in group pleading, but the Amended Complaint repeatedly refers to "Defendants" without explaining how particular allegations are true with respect to each of Messrs. Bisaro, Olafsson, and Reasons.  The Opposition does not fix this failure.

---

[8]     Plaintiffs' cited cases are not applicable here because the Amended Complaint contains no confidential witness allegations and Mr. Reasons' response to the analyst was accurate.  *See In re Gen. Elec. Co. Sec. Litig.*, 857 F. Supp. 2d 367, 397–98 (S.D.N.Y. 2012) (finding plausible inference of scienter based on confidential witnesses who ascribed knowledge to defendant); *In re Urban Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 653 (E.D. Pa. 2015) (misleading response to analyst may evidence scienter).

**2.    Mallinckrodt's Bankruptcy-Related Retention Plans Do Not Create a Strong Inference of Scienter.**

Plaintiffs cannot rely on incentive compensation programs related to Mallinckrodt's bankruptcy (the KEIP, KERP, and MIP) to establish a strong inference of scienter. Plaintiffs admit that neither Messrs. Bisaro nor Olafsson received compensation from the KEIP or KERP. Opp. at 10. While Mr. Reasons received compensation under the programs, he was not a director and had no role in approving the programs or his award.[9] Plaintiffs argue that Defendants were motivated to lie to investors about Mallinckrodt's prospect of re-entering bankruptcy to allow time for the equity awards they received in 2022, as disclosed in Mallinckrodt's 2023 proxy statement, to vest and be sold. Opp. at 35–36. This allegation makes no sense when none of the equity awards vested during the Class Period and none of Defendants sold any stock during the Class Period. Plaintiffs further argue that Defendants' ultimate goal was to receive new equity awards from the MIP implemented following the second bankruptcy. But it makes no sense to suggest that that Defendants would lie to investors in the hopes that, following the second bankruptcy, they would not be fired but instead receive incentive payments. *See* Mov. Br. at 28.

**3.    Plaintiffs Cannot Rely on Corporate Scienter or Core Operations.**

Plaintiffs argue that the Amended Complaint alleges corporate scienter, but Mallinckrodt is not a defendant in this case. Plaintiffs offer no case law to show that a corporation's scienter can be imputed to an individual. *Cf. Roofer's Pension Fund v. Papa*, 687 F. Supp. 3d 604, 630 (D.N.J. 2023) (noting that scienter may be imputed from an individual to a corporation because "corporations do not have their own state of mind") (cleaned up). Plaintiffs also argue that the

---

[9]    Plaintiffs are wrong, Opp. at 36, that a generic motive to earn compensation supports scienter if connected to a specific transaction. *See*, *e.g.*, *In re Amarin Corp. PLC.*, 2015 WL 3954190, at *11 (D.N.J. June 29, 2015) (finding compensation allegations in connection with FDA approval of specific drug were insufficient to support scienter).

core operations doctrine creates a strong inference of scienter, but the core operations doctrine is inapplicable here because there are no particularized allegations about each Defendant's individual knowledge accompanying the "core operations" allegations. *See*, *e.g.*, *In re Campbell Soup Co. Sec. Litig.*, 2020 WL 7022655, at *11 (D.N.J. Nov. 30, 2020) (no core operations doctrine where plaintiffs "failed to allege facts upon which the Court can conclude . . . that Defendants knew their statements were false").[10]

## CONCLUSION

For these reasons and the reasons set forth in Defendants' moving papers, this Court should dismiss the Amended Complaint in its entirety with prejudice.

Dated: June 10, 2024

HOGAN LOVELLS US LLP

By: _____

Allison M. Wuertz
William M. Regan (*admitted pro hac vice*)
Jacey L. Gottlieb (*admitted pro hac vice*)
390 Madison Avenue
New York, New York 10017
Tel: (212) 918-3000
Fax: (212) 918-3100
allison.wuertz@hoganlovells.com
william.regan@hoganlovells.com
jacey.gottlieb@hoganlovells.com

*Attorneys for Defendants*

---

[10] Regarding Plaintiffs' Section 20(a) claim, Defendants argued that Plaintiffs failed to plead either a primary violation or facts showing culpable participation. *See* Mov. Br. at 30. The Opposition does not change that conclusion, and the Section 20(a) claims should be dismissed.

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2024, Defendants' Reply Memorandum in Support of the

Motion to Dismiss the Consolidated Class Action Complaint and supporting documents were filed

through the ECF system for electronic service to the registered participants.

_____

Allison M. Wuertz

13