# EXHIBIT 21

                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE


IN RE:                          .  Chapter 11
                                .  Case No. 20-12522 (JTD)
MALLINCKRODT PLC, *et al.*,     .
                                .  (Jointly Administered)
                                .
                                .  Courtroom No. 5
                                .  824 Market Street
             Debtors.           .  Wilmington, Delaware 19801
                                .
                                .  Thursday, December 9, 2021
. . . . . . . . . . . . . . . .  9:30 a.m.

                     TRANSCRIPT OF ZOOM HEARING
               BEFORE THE HONORABLE JOHN T. DORSEY
                 UNITED STATES BANKRUPTCY JUDGE
                    **TRIAL PHASE II (DAY #4)**

APPEARANCES:

For the Debtors:          Michael J. Merchant, Esquire
                          RICHARDS, LAYTON & FINGER, P.A.
                          One Rodney Square
                          920 North King Street
                          Wilmington, Delaware 19801

                          -and-

                          Elizabeth A. Morris, Esquire
                          Christopher Harris, Esquire
                          LATHAM & WATKINS, LLP
                          1271 Avenue of the Americas
                          New York, New York 10020

(APPEARANCES CONTINUED)

Audio Operator:           Jermaine Cooper, ECRO

Transcription Company:    Reliable
                          The Nemours Building
                          1007 N. Orange Street, Suite 110
                          Wilmington, Delaware 19801
                          Telephone: (302)654-8080
                          Email: gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (CONTINUED):

For the Specialty
Generic Debtors
Independent Directors:      Dan Barnowski, Esquire
                           KATTEN MUCHIN ROSENMAN, LLP
                           2900 K Street NW
                           North Tower
                           Suite 200
                           Washington, DC 20007

                           David A. Crichlow, Esquire
                           575 Madison Avenue
                           New York, New York 10022

For the Ad Hoc
Acthar Group:              Donald E. Haviland, Jr., Esquire
                           HAVILAND HUGHES
                           201 South Maple Avenue
                           Suite 110
                           Ambler, Pennsylvania 19002

For the City
of Rockford:               Albert A. Ciardi, III, Esquire
                           CIARDI, CIARDI & ASTIN
                           1204 North King Street
                           Wilmington, Delaware 19801

For Sanofi-Aventis:        Aaron Applebaum, Esquire
                           DLA PIPER, LLP (US)
                           1201 North Market Street
                           Suite 2100
                           Wilmington, Delaware 19801

For Humana:                Benjamin McCallen, Esquire
                           WILLKIE FARR & GALLAGHER, LLP
                           787 Seventh Avenue
                           New York, New York 10019

3

INDEX

MOTIONS:                                                              PAGE

           Continuation of Confirmation Hearing

Agenda
Item 1:  [Sealed] The Acthar Insurance Claimants'              182
         Motion in Limine to Exclude the Expert
         Opinions of UCC's Expert Sue Stuckwisch
         [Docket No. 5572 – filed November 29, 2021]

Agenda
Item 2:  [Sealed] The Acthar Insurance Claimants'              182
         Motion to Strike the Official Committee of
         Unsecured Creditors' Rebuttal Disclosures
         Pursuant to Rule 26(a)(2)(C) for Sue
         Stuckwisch
         [Docket No. 5669 – filed December 3, 2021]

INDEX

WITNESSES CALLED
BY THE DEBTORS:                                          PAGE

        SHERMAN EDMISTON, III
        Direct examination by Mr. Barnowski                 6


        FREDERIC SELCK, PHD
        Direct examination by Ms. Morris                   31
        Voir dire examination by Mr. Haviland              35
        Continued direct examination by Ms. Morris         52
        Cross-examination by Mr. Haviland              72,124
        Redirect examination by Ms. Morris                168

        RANDALL EISENBERG
        Direct examination by Mr. Harris                  185

EXHIBITS

EXHIBITS:                                               PAGE

273 - Transcript                                        167

276 - Pleadings                                         167

277 - Pleadings                                         167

278 - Pleadings                                         167

279 - Pleadings                                         167

280 - Pleadings                                         167

281 - Pleadings                                         167

282 - Court opinion                                     168

283 - Court opinion                                     168

284 - Medicaid document                                 168

Transcriptionist's Certificate                          247

THE COURT:  All right.  Thank you, Mr. Garfinkle.

MR. GARFINKLE:  Thank you.

THE COURT:  All right.  With that, Mr. Eisenberg, please raise your right hand, state your full name for the record, and spell your last name for the record.

THE WITNESS:  Randall Eisenberg, E-i-s-e-n-b-e-r-g.

RANDALL EISENBERG, WITNESS, AFFIRMED

THE WITNESS:  I do.

THE COURT:  Thank you.

Go ahead, Mr. Harris.

MR. HARRIS:  Thank you, Your Honor.

DIRECT EXAMINATION

BY MR. HARRIS:

Q    Mr. Eisenberg, where are you physically located now?

A    I'm in New York, New York.

Q    Is anyone else in the room with you?

A    No one else is in the room with me.

Q    And is there any material related to the matter with you in front of you?

A    Yes, I have in front of me, my declaration in support of confirmation, as well as a series of exhibits both, in hard copy and available on soft copy.

Q    And where are you employed?

A    At AlixPartners.

the debtors?

A     At the same time, when our engagement began.

Q     And what's your personal role on that engagement?

A     I lead the engagement for AlixPartners and I serve as a senior advisor to the company.

Q     And can you describe the various tasks that you perform for the debtors in the engagement.

A     Sure.  I was, along with the firm, involved in, initially, in the preparation for what was going to be a more siloed Chapter 11 process.  That later expanded into a broader company-wide restructuring and, as a result, assisted the company in preparing for Chapter 11.

I was involved, also, in assisting in negotiations in developing what ultimately became the RSA     and then post-petition, I've been involved in a number of areas, including assisting the company with its schedule of forecasting business plans, operations within -- as well in Chapter 11, continuing to play a role in negotiating with the various parties as we expanded the number of constituents that have become supporters of the RSA, as well as developing the overall plan and disclosure statement.  Those would be some examples of the roles that I play.

Q     And prior to your work on behalf of the debtors, have you previously advised parties in in-court, or out-of-court restructurings?

opinion with respect to substantive consolidation.

A     Yes, I don't believe that the debtor's assets and liabilities are hopelessly commingled on a post-petition basis and, therefore, substantive consolidation is not appropriate.

Q     Okay.  And just to be clear, sit your understanding that any creditor is still raising an objection based on substantive consolidation?

A     I don't believe so.

Q     Okay.  I'm not going to ask you any further about that one, but I would like to talk about, in more detail, to the other opinions.

So, as a general matter, when you reference feasibility, can you explain what you mean.

A     Yes.  So, feasibility, again, from my perspective goes back to, you know, whether the company, post-emergence will be involved in liquidation.  Will be followed by liquidation or further financial restructuring.  That is the test, from my perspective, as to whether feasibility, the feasibility test is met.

Q     And what principle documents did you rely on when determining whether the plan is feasible?

A     The primary documents that I would have relied upon is the financial projections that are contained in the disclosure statement and, in addition, what I'll call the

refreshed projections, which reflects some updated projections that the management team prepared and issued in September of 2021.

MR. HARRIS:  All right.  Can we display Debtors' Exhibit 15, financial projections?

(Pause in proceedings)

MR. HARRIS:  And can we just go on to the next page, also, then?  Okay.

BY MR. HARRIS:

Q     Are these the financial projections you were referring to from the disclosure statement?

A     Yes, they are.

Q     And how were these projections developed?

A     These projections were developed by the management team, beginning in the Summer of 2020, as the debtors prepared their strategic plan, and they were presented to the board of directors in February of 2021 for board approval.

Q     Okay.  And did AlixPartners have any role in preparing the projections?

A     The projections were prepared by management. AlixPartners did review the projections, we assisted in putting together presentations that were used with creditor constituents, as well as assisted in preparing this particular document, which is -- which those projections serve as the basis of.

MR. HARRIS:  Okay.  Now could we put up Exhibit 42?

BY MR. HARRIS:

Q     And Mr. Eisenberg, do you recognize this document?

A     Yes, I do.

Q     Okay.  And what is this?

A     This is a Form 8-K that was filed with the SEC that we've used to publish what's called a "refresh" of the 2021 strategic plan.

MR. HARRIS:  Could we turn to the last page of this exhibit?

BY MR. HARRIS:

Q     And what's -- what is shown on this page of this 8-K?

A     The last page is what I referenced before as being the refreshed projections.  They are the updated projections that the company developed that cover the years 2022 to 2025.

Q     And have these refreshed projections been approved by the debtors' board of directors?

A     These projections were not formally approved by the board of directors; however, they are management's best estimate as to what the anticipated performance will be at the company post-emergence for the years reflected.

Q     And what are the drivers that caused the projections to be revised?

A     The management team regularly, I would say on a