# EXHIBIT 23

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MALLINCKRODT PLC, *et al.*, | ) | Case No. 23-[_____] (___) |
|  | ) |  |
| Debtors.[1] | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) |  |

**DECLARATION OF JASON GOODSON, EXECUTIVE VICE PRESIDENT AND**
**CHIEF STRATEGY AND RESTRUCTURING OFFICER, IN SUPPORT OF**
**CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS**

I, Jason Goodson, declare under penalty of perjury:

1.      I am the Executive Vice President and Chief Strategy and Restructuring Officer responsible for overseeing corporate strategy, business development, business intelligence, and restructuring efforts of the above-captioned debtors (collectively, the "***Debtors***") and their non-debtor affiliates (the "***Non-Debtor Affiliates***" and together with the Debtors, "***Mallinckrodt***" or the "***Company***").  As a licensed Certified Public Accountant in the state of Missouri, I have more than 18 years of experience in finance leadership, as well as strategic and M&A transactions.  I have held a number of roles at Mallinckrodt, most recently as the Executive Vice President and Head of Corporate Development.  Prior to joining Mallinckrodt, I held various finance leadership roles at a renewable energy company and was tasked with finance transformation initiatives and business development transactions.  Before Mallinckrodt, I worked as an audit manager in PricewaterhouseCoopers' financial services practice.

---

[1]      A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/mallinckrodt2023.  The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

US-DOCS\142233122RLF1 29535256v.1

### B.  Adverse Economic Conditions

19.  Rising interest rates have exacerbated the Company's leverage and debt-service costs, thereby compressing the Company's bottom-line results.  As a result of rising interest rates, the London Interbank Offered Rate—a benchmark interest rate affecting the Company's interest costs—experienced the fastest rate increase in history, increasing over the last several years, beginning at 0.228% on the petition date of the Company's Previous Chapter 11 Cases, declining slightly to 0.209% on December 31, 2021 (during the confirmation trial in the Previous Chapter 11 Cases) and then rising to 2.06% upon emergence, and since reaching as high as 5.63% in July 2023.  Each 1.0% increase in benchmark rates results in approximately $17 million of incremental interest expense for the Company, given its $1.7 billion of variable-rate debt.  Faced with that risk, the Company sought to hedge against rising interest rates as early as August 2022 but was unsuccessful due to its credit profile until March 2023, when the Company purchased an interest rate cap at $20 million for rate exposure on the First Lien Term Loans (as defined below).

20.  Market dynamics have had other negative effects.  In particular, the Company was unable to complete two strategic divestitures it explored during 2022 as indications of interest all came in lower than the value of the applicable business lines.  The proceeds of these transactions would have gone to pay down debt, but due to insufficient market interest, the Company was unable to address its leverage in the manner it intended.

21.  These business developments and adverse economic conditions are reflected by the significant discounts to par (as illustrated in the table below) at which the Prepetition Funded Debt Obligations are currently trading.



**Post-Emergence Debt Pricing History**

Certain of the Company's second lien notes (which are senior to the Company's opioid liabilities and other unsecured debt) currently trade at 16 cents on the dollar, and Mallinckrodt plc's shares of common equity have traded down from a high of approximately $25 shortly after emergence from the Previous Chapter 11 Cases to less than one dollar recently, foreclosing the opportunity to access the equity capital markets. Based on these data points and the Company's financial performance, the Company is presently insolvent comparing its value as a going concern to the face amount of its debt and settlement obligations.

      C.      **Dwindling Liquidity Position and Limited Access to Capital**

22.      Cash outflows (including those as a result of increased interest expense as described above) are expected to deplete Mallinckrodt's liquidity reserves over the next 12 months. The Company projects negative free cash flow on a levered basis continuing through 2026 driven by debt service and substantial annual opioid and CMS settlement payments. The Company expects

11

### D.      Outreach from Stakeholders

25.      After the Company issued its first quarter 2023 earnings, the concerns summarized above suddenly came to a head.  The Company's earnings included announcing that adjusted EBITDA for the first quarter of 2023 declined by $53.5 million (or 30%) year-over-year to $123.5 million.  While the Company expected a decline in adjusted EBITDA for the first quarter of 2023, it did not foresee the full extent of decline in Acthar and Therakos.  From a cash-flow standpoint, excluding certain tax refunds, operating cash flow was negative $39.4 million in the first quarter of 2023, with a total negative free cash flow of $58.7 million, leaving the Company with approximately $400 million in cash.  These results preceded what was expected to be an expensive month in June 2023, when the Company's settlement obligations to the MDT II of $200 million, along with an additional $50 million in debt servicing obligations, would significantly impact its existing liquidity.[8]

26.      On May 17, 2023, following the first quarter earnings call, the Company received the first of a series of unsolicited letters on behalf of various stakeholders holding substantial positions across the Company's capital structure.  These letters offered a range of proposed solutions to address the Company's long-term liquidity issues.  There were numerous public reports about these letters, which led to additional outreach from various stakeholders.  Prior to receipt of these letters, in connection with the Company's evaluation of its capital needs in light of its obligations under the opioid settlement and its long-term debt obligations, the Company had commenced preliminary discussions with the MDT II about alternatives to the existing payment structure for the opioid settlement.  On June 1, 2023, the MDT II sent a letter to the Company,

---

[8]    In August 2023, the Company released its earnings for the second quarter 2023.  Those results were materially improved from the first quarter and exceeded the Company's February 2023 guidance, but notably, performance for that period was still lagging the expectations built into the Company's business plan at the end of the Previous Chapter 11 Cases.

13

demanding timely payment of the settlement payment and making clear its intention to vigorously defend its rights in the event of nonpayment.

27.    Outreach from creditor constituencies raised the prospect of addressing the Debtors' long-term obligations in a way that would alleviate their financial issues and maximize the value of the Debtors' businesses.  By reducing their payment obligations, the Debtors expect to generate positive cash flow with the hope of returning their business to a growth trajectory and to allow additional investment in their business.  Moreover, the Debtors believe that delaying pursuit of a comprehensive, broadly supported restructuring would result in increased value deterioration as the Debtors' long-term financial risks come closer to reality.  Without a comprehensive restructuring, the Debtors likely would have needed to address their near-term maturities in 2024 as it faced a $200 million payment to the MDT II in June 2024 and another year of debt service costs, which collectively could have triggered a going concern qualification and thus potential for events of default across the Company's capital structure.  These costs would have exacerbated the Company's liquidity issues and brought it below the minimum liquidity it needs to function properly, leaving it to address 2024 settlement obligations and 2025 debt maturities against the backdrop of a significant set of maturities in 2027 on the First Lien Term Loans.

28.    Given these concerns and the continued outreach from multiple stakeholder constituencies, the Company's board of directors authorized the management team to explore all alternatives and to engage with the stakeholders.  To further that effort, the Company made an illustrative proposal to address the entire capital structure and opioid settlement liabilities to the various ad hoc groups of first lien and second lien creditors as well as the MDT II.  On June 15, 2023, the Debtors elected to enter the grace period for the interest due on their first lien notes due

14

RLF1 29535256v.1

requiring its action.  Subsequent to the work and oversight of the SRC, the Board of Directors unanimously approved the Debtors' entry into the RSA and pursuit of the restructuring transactions contemplated therein.

## III.   ANTICIPATED PATH FORWARD

88.   In light of the foregoing, Mallinckrodt, with the support of a significant percentage of its First Lien Lenders, Second Lien Lender, and the MDT II, is seeking to right-size its capital structure in order to maximize its ability to service the overall payment stream as part of a value-maximizing Chapter 11 process.

89.   On May 17, 2023, following Mallinckrodt's first quarter 2023 earnings call, the Debtors were contacted by several ad hoc groups representing holders of the Debtors' various debt instruments, including:  (a) an ad hoc group of holders of First Lien Term Loans, 2025 First Lien Notes, 2028 First Lien Notes, and 2029 Second Lien Notes represented by Gibson, Dunn & Crutcher LLP (the "*Ad Hoc First Lien Term Loan Group*"); (b) an ad hoc group of holders of First Lien Term Loans, 2025 First Lien Notes, 2028 First Lien Notes, 2025 Second Lien Notes, and 2029 Second Lien Notes represented by Paul, Weiss, Rifkind, Wharton & Garrison LLP (the "*Ad Hoc Crossover Group*"); (c) an ad hoc group of holders of 2025 First Lien Notes represented by Davis Polk & Wardwell LLP (the "*Ad Hoc 2025 Noteholder Group*" and together with the Ad Hoc First Lien Term Loan Group and the Ad Hoc Crossover Group, the "*Creditor Groups*"); and (d) a large holder of the Debtors' 2025 Second Lien Notes.  In their communications with the Debtors, the Creditor Groups expressed a willingness to negotiate various types of de-leveraging or liability management transactions to assist the Debtors in reducing their financial obligations and ensuring that the business would continue as a going concern.  Promptly thereafter, the Debtors and the Creditor Groups embarked on a consensus-building process and began exploring a value-maximizing path forward.  Such efforts led to entry into the RSA on August 23, 2023, which

44

RLF1 29535256v.1

included the revised payment terms with the MDT II. The Debtors believe that the comprehensive restructuring contemplated by these agreements will right-size the Company's capital structure in a manner that will ensure the business' viability as a going concern.

## IV.    Facts Supporting Relief Sought in First Day Pleadings[20]

90.    In furtherance of the objective of preserving value for all stakeholders, the Debtors have sought approval of the First Day Pleadings and related orders (the "**Proposed Orders**"), and respectfully request that the Court consider entering the Proposed Orders granting the First Day Pleadings. For the avoidance of doubt, the Debtors seek authority, but not direction, to pay amounts or satisfy obligations with respect to the relief requested in those of the First Day Pleadings for which such authority is sought. The First Day Pleadings include:

### A.    Administrative and Procedural Pleadings

a.    *Motion of Debtors for Order Directing Joint Administration of Chapter 11 Cases*

b.    *Motion of Debtors for Interim and Final Orders Authorizing Redaction of Personally Identifiable Information for Individuals*

c.    *Motion of Debtors for an Order Modifying the Requirements for Mallinckrodt plc to File a List of All Equity Holders*

### B.    Business Operation Motions

a.    *Motion of Debtors for Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Certain Employee Compensation and Benefits, (B) Maintain and Continue Such Benefits and Other Employee-Related Programs, and (C) Pay Prepetition Claims of Contracted Labor, and (II) Granting Relief from Automatic Stay with Respect to Workers' Compensation Claims*

b.    *Motion of Debtors for Interim and Final Orders Authorizing the Debtors to Pay Certain Prepetition Taxes and Fees*

---

[20]    Unless otherwise defined herein, all capitalized terms in this Part IV shall have the meanings ascribed to them in the applicable First Day Pleadings.

45

transition to, and operate in, Chapter 11 with minimal employee attrition, interruptions and disruptions to our businesses, or loss of productivity or value; (ii) is necessary preserve valuable relationships with customers, trade vendors and other creditors; and (iii) constitutes a critical element in the Debtors' ability to successfully maximize value for the benefit of their estates.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 28, 2023

Wentzville, Missouri

/s/ Jason Goodson
Jason Goodson
Executive Vice President and Chief Strategy and
Restructuring Officer

RLF1 29535256v.1