**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CONTINENTAL GENERAL INSURANCE COMPANY and PERCY ROCKDALE, LLC**, *Individually and on Behalf of All Others Similarly Situated*,<br><br>        Plaintiffs,<br><br>        v.<br><br>**SIGURDUR OLAFSSON, BRYAN M. REASONS, and PAUL BISARO,**<br><br>        Defendants. | Civil Action No. 23-3662 (ZNQ) (JBD)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion," ECF No. 19) filed by Defendants Sigurdor Olafsson, Bryan M. Reasons, and Paul Bisaro (collectively, "Defendants"). Defendants filed a Brief in Support of the Motion. ("Moving Br.," ECF No. 19-1.) Plaintiffs Continental General Insurance Company and Percy Rockdale, LLC, individually and on behalf of all others similarly situated, (collectively, "Plaintiffs"), filed a consolidated brief in opposition to Defendants' Motion ("Opp'n Br.," ECF No. 25), to which Defendants replied ("Reply Br.," ECF No. 26).

The Court carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1]  For the reasons set forth below, the Court will deny Defendants' Motion.

## I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND[2]

### A.    Procedural History

Plaintiffs filed an initial complaint on July 7, 2023.  (Compl., ECF No. 1.)  Thereafter, on December 26, 2023, Plaintiffs filed a ninety-page amended class-action complaint alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Securities Exchange Act" or "the Act") (Counts I and II, respectively).[3]  (Am. Compl., ECF No. 17.) Defendants filed the instant Motion on February 26, 2024.  (ECF No. 19.)

### B.    Factual Background

As alleged in the Amended Complaint, Defendants are corporate executives of Mallinckrodt, PLC ("Mallinckrodt" or "the Company"), a life sciences company that develops, manufacturers, markets, and distributes specialty pharmaceutical products and therapies, including opioid products, to patients with a variety of health conditions.[4]  (Am. Compl. ¶¶ 37, 39–40.) Mallinckrodt is incorporated under the laws of Ireland with a principal office in Dublin, Ireland, and a corporate shared services office in Hazelwood, Missouri.  (*Id.* ¶ 35.) The individually named Defendants are Sigurdur Olafsson ("Olafsson"), the Chief Executive Officer, President, and

---

[1] All references to Rules hereinafter refer to the Federal Rules of Civil Procedure unless otherwise noted.

[2] For the purpose of considering this Motion, the Court accepts all factual allegations in the Complaint as true.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[3] Count I alleges a violation of both Section 10(b) and corresponding Rule 10b-5 of the Securities Exchange Act.

[4] Mallinckrodt was named in the initial complaint filed in this case, but claims against it have been stayed and administratively terminated in light of its subsequent filing of a petition for bankruptcy in the District of Delaware in August 2023.  (ECF Nos. 13–15.)

Director of the Company; Bryan Reasons ("Reasons"), the Executive Vice President and Chief Financial Officer of the Company; and Paul Bisaro ("Bisaro"), the Chairman of the Company's Board of Directors.  (*Id.* 30–32.)  Plaintiffs are class members who acquired Mallinckrodt securities between June 17, 2022, and August 25, 2023 (the "Class Period").  (*Id.* ¶ 1.)

On October 12, 2020, Mallinckrodt voluntarily filed for Chapter 11 bankruptcy, citing to potential liabilities from litigation, a dispute with the Centers for Medicaid and Medicare Services, and opioid litigation arising from the opioid epidemic as a manufacturer of generic opioid products. (*Id.* ¶¶ 7–12; Moving Br. at 4–5.)  A bankruptcy plan was created to help Mallinckrodt restructure its indebtedness and strengthen its balance sheet.  (Am. Compl. ¶ 10–11; Moving Br. at 5.)  As part of the plan, Mallinckrodt agreed to pay the money it owed from the opioid settlement into a trust in a series of nine installments.  (Am. Compl. ¶¶ 10, 150; Moving Br. at 5.)  Mallinckrodt emerged from the 2020 bankruptcy on June 16, 2022, after having paid some installments, with its common stock valued at $18.50 per share.  (Moving Br. at 6.)

Over the next several fiscal quarters, Mallinckrodt continued to experience sales difficulties and negative financial trends.  (Am. Compl. ¶¶ 187–195; Moving Br. at 7–12.) Mallinckrodt's stock price continued to decline, and it still owed several billions of dollars to creditors as it attempted to comply with the bankruptcy plan.  (Am. Compl. ¶¶ 17–22, 67; Moving Br. at 6–12.)  In early June 2023, despite reassuring investors that the Company was able to meet its projections and obligations, the Wall Street Journal published an article titled "Mallinckrodt Explores Repeat Bankruptcy as $200 Million Opioid Payment Comes Due."  (Am. Compl. ¶¶ 95, 187.)  Consequently, Mallinckrodt's share price fell approximately forty percent to $1.47 per share. (*Id.* ¶ 96.)  Later that month, partially because of statements made in Mallinckrodt's Form 8-K filed with the United Stated Securities and Exchange Commission (the "SEC"), Mallinckrodt's

ordinary share price fell to $0.87 per share.  (*Id.* ¶¶ 189–190.)  By the end of the Class Period, Mallinckrodt's share price fell to $0.34 per share.  (*Id.* ¶ 195.)  And on August 28, 2023, due to its continued financial difficulties, Mallinckrodt—and its related entities—voluntarily filed a second petition for Chapter 11 bankruptcy.  (*Id.* ¶ 23; Moving Br. at 12.)

Plaintiffs allege that throughout the class period, they were harmed because of Defendants' "materially false and/or misleading statements regarding the Company's business, operations, and prospects."  (*Id.* ¶ 12.)  According to the Amended Complaint, these statements included, among other things, assertions portraying that,

> (i) Defendants were confident that Mallinckrodt had the ability to create value for shareholders after it emerged from the First Bankruptcy; (ii) the Company's operating plan could enable it to fulfill the First Bankruptcy Plan and continue operating as a going concern; (iii) the Company had sufficient liquidity to remain solvent; (iv) the Company's financial performance, which met specific benchmarks and showed improvement, was sufficient to keep operating as a going concern; and (v) . . . bankruptcy concerns were in the past.

(*Id.*)

Moreover, the Amended Complaint stated that "Defendants made materially false and/or misleading statements" because "(i) Mallinckrodt had overstated its financial strength, including purported enhancements to its liquidity and balance sheet, following its emergence from Chapter 11 bankruptcy protection; [and] (ii) . . . the Company overstated its ability to timely make one or more payments to the Trust for the Opioid Settlement."  (*Id.* ¶ 13.)  These false and misleading statements "negatively impacted Mallinckrodt's ability and/or willingness to timely meet interest payment obligations on certain bonds" and "increased [the] risk of having to again file for Chapter 11 bankruptcy protection."  (*Id.*)

Plaintiffs further alleged that,

> Defendants knew their statements throughout the Class Period were
> false and misleading because they knew that the Company's
> performance was far below what was needed to fulfill the First
> Bankruptcy Plan after they began meeting with an investment
> banking advisor as early as October 2022 to evaluate Mallinckrodt's
> financial condition and conducted a strategic review of the
> Company's operations from late 2022 to early 2023.  Defendants
> never disclosed to investors that this strategic review was in process
> until after the Company had filed for bankruptcy.

(*Id.* ¶ 14.)

In support of their general allegations, Plaintiffs recite in their Amended Complaint a litany of statements made by Defendants.  (*See id.* ¶¶ 71–91, 139–186.)  These statements, according to Plaintiffs, were either misleading or materially false, and made in official press releases, miscellaneous corporate statements, quarterly calls, proxy statements, conference calls with investors and analysts, and quarterly and annual reports filed with the SEC.  (*See id.* ¶¶ 71–91, 139–186.)  More specifically, Plaintiffs allege that starting from June 16, 2022,[5] "Defendants' statements from the time the Company emerged from the First Bankruptcy . . . gave investors [no] indication that the Company was unable to meet its obligations under the First Bankruptcy Plan." (*Id.* ¶ 92.)  Plaintiffs further alleged that "Defendants never apprised investors . . . that even if it performed as predicted, the Company could not fulfill the First Bankruptcy Plan or continue operating as a going concern."  (*Id.* ¶ 125.)

Structurally, Plaintiffs devote an entire section of their Amended Complaint to "Materially False and Misleading Statements Issued During the Class Period."  (*Id.* ¶¶ 71–91, 139–186.)  Those statements are supported by paragraphs explaining why the statements are misleading or materially

---

[5] To be clear, while Defendants' first allegedly actionable statement was made on June 16, 2022, the proposed Class Period begins on June 17, 2022.  *See* Am. Compl. ¶¶ 1, 141.  Because the first statement was made outside of the Class Period, the Court will not consider it.

false. (*See id.* ¶¶ 139–186.) The alleged misleading statements, when read together, can be summarized as follows:

                1.   <u>June 2022</u>

In June 2022, Mallinckrodt issued a press release discussing its bankruptcy plan and "strengthened balance sheet" following its first bankruptcy. (*Id.* ¶ 141.) In that release, Olafsson assured investors that "Mallinckrodt is emerging from its recent restructuring process with an attractive pipeline, enhanced financial flexibility and significant opportunities to drive stakeholder value." (*Id.*) That same release contained a statement by Bisaro noting that "[t]oday marks a new beginning for Mallinckrodt as we emerge well-positioned for long-term success, with a substantially stronger capital structure and major litigation matters permanently resolved." (*Id.* ¶ 142.) These statements, according to Plaintiffs, were false and misleading because Defendants "overstated Mallinckrodt's financial strength." (*Id.* ¶ 143.)

                2.   <u>August 2022</u>

In early August, Defendants issued a second quarter release which contained quotes and representations from Olafsson stating that "[w]hile the Company has faced many challenges, we have a strong foundation and significant potential" and that "Mallinckrodt today benefits from significant liquidity, meaningful cash flows from operations, a solid U.S. commercial platform and competitive positioning in Critical Care and Immunology." (*Id.* ¶ 144.) The release also notes that after "eliminat[ing] more than $1.3 billion in debt principal and clos[ing] a new $200 million accounts receivable financing facility with the overhang and expense of the opioid litigation now behind us" there is "a clear path forward to continue operating the business in a responsible manner." (*Id.* ¶ 145.) Also in August, Defendants held a second quarter call again discussing the Company's "significant liquidity" and "meaningful case flow[]," (*id.* ¶ 146), and submitted a Form

10-Q with the SEC discussing its ability to pay the installments under the first bankruptcy plan, (*id.* ¶ 150.)

### 3. November 2022

In November, Mallinckrodt issued a press release regarding its third quarter financial results, again discussing the Company's financial progress, strategic initiatives, improvement of its balance sheet, and strengthening of the organization. (*Id.* ¶ 153.) There was also a third quarter call this month emphasizing the Company's "strong future," (*id.* ¶¶ 153–157), and a quarterly report filed with the SEC, (*id.* ¶ 159.)

### 4. February 2023

In February 2023, Mallinckrodt issued a FY22 Release explaining that it "increased cash on hand" and is "well-positioned to stabilize the business in the near term and achieve sustainable growth in the long term." (*Id.* ¶ 162.) That same month, there was a phone call with more statements about the Company's "solid" finances and plans. (*Id.* ¶¶ 162–167.)

### 5. March 2023

In March, Mallinckrodt filed an annual report with the SEC. (*Id.* ¶¶ 168–177.)

### 6. May 2023

In May 2023, Mallinckrodt issued a press release announcing its 2023 first quarter results, which again, discussed the Company's "increased cash on hand," and "sustainable long-term growth." (*Id.* ¶ 178.) That same month, Mallinckrodt conducted a first quarter call where Olafsson and Reasons reassured investors that "while we still have work to do, our progress to date reinforces my confidence in Mallinckrodt's ability to drive a long-term value while continuing to deliver for our patients." (*Id.* ¶ 181.)

Finally, in addition to the overwhelming number of statements alleged in the Amended Complaint, the Amended Complaint also contains a section on scienter and the reasons why each

Defendant allegedly knew or recklessly disregarded the facts explained. (*Id.* ¶¶ 196–208.) And "[a]s a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and [the] other Class members have suffered significant losses and damages." (*Id.* ¶ 24.)

## II.    <u>JURISDICTION</u>

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa.

## III.    <u>LEGAL STANDARD</u>

### A. Rule 12(b)(6)

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211

(quoting *Iqbal*, 556 U.S. at 679).    A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).  On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

There is also a three-step process with respect to motions to dismiss in a Section 10(b) action under the Securities Exchange Act, as is the case here:  First, as with any Rule 12(b)(6) motion, courts must "accept all factual allegations in the complaint as true." *Winer Family Tr. v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007).  Second, "courts must consider the complaint in its entirety." *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  And third, in determining whether the pled facts give rise to a "strong" inference of scienter, the court must take into account plausible opposing inferences.  *Id.*

### B.    The PSLRA and Rule 9

Fraud-based claims brought under the Securities Exchange Act, and alleged as part of a private securities class action, are additionally subject to the heightened pleading requirements of both Rule 9(b) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u, *et seq.*, (the "PSLRA").[6]  *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006).

Under Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Frederico v. Home Depot*, 507 F.3d 188, 200–02 (3d Cir. 2007) (noting that a court may grant a motion to dismiss a fraud-based claim if the plaintiff

---

[6] Congress enacted the PSLRA in 1995 to address "perceived abuses of the class-action vehicle involving nationally traded securities" and to help "identify ways in which the class-action device was being used to injure 'the entire U.S. economy.'" *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006) (quoting H. R. Conf. Rep. No. 104–369, p 31 (1995)).

fails to plead with the required particularity). Particularity requires sufficient details to put the defendant "on notice of the precise misconduct with which [it is] charged." *Id.* at 201 (alteration in original) (quoting *Lum v. Bank of Am.*, 261 F.3d 217, 223–24 (3d Cir. 2004) (abrogated on other grounds)) (internal quotation marks omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties*, 438 F.3d at 276–77.

The PSLRA, which has an even higher pleading standard than Rule 9(b), is targeted at preventing abusive securities litigation. *See Tellabs, Inc.*, 551 U.S. at 313 ("Private securities fraud actions . . . if not adequately contained, can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law."). The PSLRA provides two distinct pleading requirements, both of which must be met for a securities complaint to survive a motion to dismiss. *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009). First, under 15 U.S.C. § 78u–4(b)(1), the complaint must "specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity." *Id.* (quoting *Winer Family Tr.*, 503 F.3d at 326) (internal quotation marks omitted). Second, the complaint must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (quoting 15 U.S.C. § 78u–4(b)(2)) (internal quotation marks omitted).

Both provisions of the PSLRA require facts to be pled with "particularity." *Id.* at 253. As such, this particularity language echoes the requirements of Rule 9(b). *Id.* Indeed, although the PSLRA replaces Rule 9(b) as the pleading standard governing private securities class actions, Rule

9(b)'s particularity requirement "is comparable to and effectively subsumed by" PSLRA § 78u–4(b)(1). *Id.* (discussing the PSLRA's requirement that a plaintiff plead the "who, what, when, where and how: the first paragraph of any newspaper story") (internal quotation marks omitted).

## IV.   DISCUSSION

### A.  Violation of Securities Exchange Act Section 10(b) (Count I)

In Count I of their Amended Complaint, Plaintiffs allege a violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 of the regulations promulgated by the SEC under the Act. (*See* Am. Compl.)  The private right of action under Section 10(b) and Rule 10b-5 "creates liability for false or misleading statements or omissions of material fact that affect trading on the secondary market." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1417 (3d Cir. 1997).  To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege: "(1) a material misrepresentation or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation." *Gold v. Ford Motor Co.*, 577 F. App'x 120, 122 (3d Cir. 2014) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)).  In relevant part, Rule 10b-5 makes it unlawful for an individual "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5(b).  For the reasons that follow, the Court finds that Plaintiffs have sufficiently pled these requirements.

In their Motion, Defendants argue that the Court should dismiss the Amended Complaint because (1) "Plaintiffs allege only that Defendants should have been more pessimistic in their assessment of Mallinckrodt's business prospects and not that Defendants made statements that were actually false on their face and/or misleading by virtue of omitting to disclose a material

fact"; (2) "Plaintiffs do not plead facts specific to each Defendant giving rise to a strong inference of scienter"; and (3) "Defendants' statements cited in the [Amended] Complaint are forward-looking statements protected by the [PSLRA's] safe harbor" provision. (Moving Br. at 14–15.) According to Defendants, "[a]ll Plaintiffs do here is allege that Defendants should have been more negative and pessimistic and disclosed to investors that the Company was troubled and unlikely to succeed in the future." (Moving Br. at 15.) Accordingly, Defendants' arguments can be broken down into three subcategories: materiality and misleading statements; scienter; and PSLRA safe-harbor. The Court will discuss each in turn.

### 1.    Materiality/Misleading Statements

To reiterate, under the PSLRA, a well-pled complaint must "specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity." *Avaya*, 564 F.3d at 252. And to have liability in a Section 10b action, a plaintiff must allege, among other elements to make out a prima facie case, a material misrepresentation or omission. *See Gold*, 577 F. App'x at 122.

Generally, information is material if it would be important to a reasonable investor in making investment decisions. *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000). An omitted fact is material if there is a substantial likelihood that a reasonable investor would have viewed its disclosure as "having significantly altered the total mix of information available to that investor." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 280 n.11 (3d Cir. 1992) (internal quotation marks omitted). A duty to disclose an omitted material fact arises only when disclosure would be necessary to make the statement "not misleading" in "light of the circumstances under which they were made." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 174 (3d Cir. 2014) (internal quotation marks omitted). Because materiality is a mixed question of law and fact, it is appropriate for a district court to dismiss allegations of misrepresentations or omissions as inactionable as a

matter of law "[o]nly if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality." *Shapiro*, 964 F.2d at 280 n.11.

Additionally, according to the United States Supreme Court's decision in *Omnicare, Inc. v. Laborers District Council Construction Industries Pension Fund*, when the alleged misleading statement at issue is an opinion or a belief, whether that statement is misleading is an "objective" inquiry that "depends on the perspective of a reasonable investor." 575 U.S. 175, 186–87 (2015). Although *Omnicare* examined claims under Section 11 of the Securities Exchange Act of 1933, these principles are "not unique to § 11." *Id.* at 191. Rather, "[t]hey inhere, too, in much common law respecting the tort of misrepresentation," *id.*, and are therefore arguably applicable to claims under Section 10(b) as well. *See In re Merck & Co.*, Civ. No. 05-1151, 2015 WL 2250472, at *9 (D.N.J. May 13, 2015) (finding *Omnicare*'s analysis of misleading opinions instructive, to some extent, on the viability of claims regarding misleading opinions under Section 10b). Furthermore, the Third Circuit has deemed determinative that "[o]pinions are only actionable under securities laws [including Section 10(b),] if they are not honestly believed and lack a reasonable basis." *City of Edinburgh Council*, 754 F.3d at 170.

Here, in accordance with the PSLRA, the Amended Complaint "specif[ies] each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity." *Avaya*, 564 F.3d at 252. Notably, the Amended Complaint clearly and in detail sets forth the alleged materially false and misleading statements made by Defendants, and provides explanations as to why those statements are misleading. (Am. Compl. ¶¶ 71–91, 139–186.) Each statement is identified via quotation

marks and often bolded for emphasis, putting Defendants "on notice of the precise misconduct with which [Defendant is] charged." (*Id.*); *see Frederico*, 507 F.3d at 200–02.

For example, in paragraph 144 of the Amended Complaint, Plaintiffs quote from Defendants' Q2 2022 Release whereby Olafsson stated, "Mallinckrodt today benefits from significant liquidity, meaningful cash flows from operations, a solid U.S. commercial platform and competitive positioning in Critical Care and Immunology." (Am. Compl. ¶ 144.) Olafsson reiterated the same to investors on a call that same day, (*id.* ¶ 146), stating that "[w]e have a clear path forward to stabilize the business by executing our near-term priorities and the top priority for me will be to reenergize our teams and helping to reinduce our stakeholders to Mallinckrodt," (*id.* ¶ 147.)

Explaining why the statements were misleading, Plaintiffs write,

> [i]n the statements in paragraphs 144-47 above, Defendants were communicating to investors that Mallinckrodt had the financial resources to fulfill the First Bankruptcy Plan, make its payments to the Opioid Trusts, continue operating as a going concern, and was not in danger of filing for bankruptcy. These statements were false and misleading, however, because Defendants had overstated Mallinckrodt's financial strength, including purported enhancements to its liquidity and balance sheet, following its emergence from Chapter 11 bankruptcy protection and Mallinckrodt's ability to timely make one or more payments pursuant to the Opioid Settlement; and as a result of the foregoing, the Company was at an increased risk of having to again file for Chapter 11 bankruptcy protection.

(*Id.* ¶ 148.)

In paragraph 149, Plaintiffs recall the Company's Q2 results and filings with the SEC whereby the Company represented that Mallinckrodt "will make [a] payment[] of $200 million . . . to our opioid . . . related settlement[] upon the one-year anniversary of the [June 16, 2022] Effective Date." (*Id.* ¶ 149 (alterations in original).) In Paragraph 150, Plaintiffs also quote the Q2 report

which states that Defendants "downplay[] the risk of the Company's default" by stating that "the occurrence of an event of default under the Opioid Deferred Cash Payments Agreement could result in the required payment of all outstanding Opioid Deferred Payments and could cause a cross-default that could result in the acceleration of certain indebtedness of Mallinckrodt and its subsidiaries." (*Id.* ¶ 150.) When addressing why these statements were misleading, Plaintiffs note that "the statements . . . above were false and misleading because Defendants knew that Mallinckrodt lacked the financial resources to make its payments to trusts pursuant to the Opioid Settlement" and thus, "downplayed the risk of the Company's default under applicable agreements." (*Id.* ¶ 150-51.)

In paragraph 157, Plaintiffs allege that Olafsson stated that Mallinckrodt "has a strong foundation underpinned by significant liquidity. . . . By executing on near term priorities, continuing to re-energize our organization, and delivering for stakeholders Mallinckrodt has a strong future ahead developing therapies designed to improve outcomes for patients. (*Id.* ¶ 157.) Again, in explaining why these statements were misleading, Plaintiffs write that "Defendants had overstated [its] financial strength." (*Id.* ¶ 158.)

Furthermore, in paragraph 159, Plaintiffs quote the Company's similar Q3 reporting to the SEC in which it reiterated that it "will make its $200 million payment to the [Opioid Trust] by June 16, 2023." (*Id.* ¶ 159.). Plaintiffs then explained why the statements were misleading, writing, "[t]he statements in paragraph 159 above were false and misleading because Defendants knew that Mallinckrodt lacked the financial resources to make its payments to trusts pursuant to the Opioid Settlement," (*id.* ¶160), and that "[t]hese statements were false and misleading because the Q3 2022 10-Q falsely communicated to or gave investors the misimpression that Mallinckrodt could fulfill the First Bankruptcy Plan and continue as a going concern," (*id.* ¶ 161).

The foregoing paragraphs are not exhaustive of the examples provided in the Amended Complaint.  (*See e.g., id.* ¶¶ 152, 158, 167, 169, 171, 174, 177.)  And in addition to pleading the statements and stating particularly why the statements were misleading, the Court finds that any allegation made on information and belief was pled by Plaintiffs with particularized facts to support that belief.  Therefore, the Court concludes that the pleading requirements set out by the PSLRA and explained in *Winer Family Tr.*, 503 F.3d at 337, are satisfied.

Regarding materiality, the Court finds that the alleged misleading statements are plausibly pled to be material—that is, important to a reasonable investor.  *See Oran*, 226 F.3d at 282.  A reasonable investor would want to know the truth about a company's financial projections and stability, and whether a subsequent bankruptcy is on the horizon given that the Company recently emerged from bankruptcy.  Arguably, if there is a time to be honest to investors, it is right after filing for bankruptcy.  Plaintiffs also allege that there were omitted facts that would have helped Plaintiffs anticipate a second bankruptcy proceeding.  It is likewise plausible that the important omissions would have "significantly altered" the information available to Plaintiffs.  *See Shapiro*, 964 F.2d at 280 n.11.  Consequently, none of the allegations of misrepresentations or omissions "are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality."  *Id.*

### 2.    Scienter

Defendants next argue that Plaintiffs have not pled scienter as to each defendant.  (Moving Br. at 14–15.)  "Scienter," a pleading requirement under the PSLRA and a prima facie element of a Section 10b and Rule 10b-5 violation, refers to the "mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).  The scienter pleading standard of 15 U.S.C. § 78u–4(b)(2) requires a plaintiff to allege facts giving rise to a "strong inference of either reckless or conscious behavior." *Avaya*, 564 F.3d at 267 (quoting *In re*

*Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534–35 (3d Cir. 1999)) (internal quotation marks omitted).  The Court of Appeals for the Third Circuit defines "recklessness" as conduct involving "not merely simple, or even inexcusable negligence, but an extreme departure from the standard of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that [the defendant] must have been aware of it."  *McLean v. Alexander,* 599 F.2d 1190, 1197 (3d Cir. 1979) (adopting definition for reckless conduct associated with either omissions or misstatements in the context of suits under Section 10(b) and Rule 10b-5).

When determining whether scienter was properly pled, courts must weigh the "plausible nonculpable explanations for the defendant's conduct" against the "inferences favoring the plaintiff."  *Tellabs*, 551 U.S. at 310.  A "strong inference" of scienter is one that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Id.* at 314, 324 ("The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the most plausible of competing inferences." (internal quotation marks omitted)); *see also id.* at 323 ("the court must take into account plausible opposing inferences.").  Although courts "aggregate the allegations in the complaint to determine whether [they] create[] a strong inference of scienter, plaintiffs must create this inference with respect to each individual defendant in multiple defendant cases."  *Winer Family Tr.*, 503 F.3d at 337.

Moreover, motive must be supported by facts stated "with particularity"; "[b]lanket assertions of motive and opportunity" will not suffice, and "catch-all allegations that defendants stood to benefit from wrongdoing and had the opportunity to implement a fraudulent scheme are no longer sufficient."  *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004).  To add, "[i]ncentive compensation is a common practice," and a desire for executives to maintain

their corporate positions is universal among corporate executives; thus, "[n]either motivation can be the basis of a fraud charge." *In re Honeywell Int'l, Inc. Sec. Litig.*, 182 F. Supp. 2d 414, 427–28 (D.N.J. 2002) (citing *Chill v. General Elec. Co.,* 101 F.3d 263, 268 (2d Cir. 1996)). Similarly, the desire to show the success of a recent transaction such as a merger is insufficient. *Id.* (citing *Phillips v. LCI International, Inc.,* 190 F.3d 609, 623 (4th Cir. 1999)).

Here, the Amended Complaint—when read in the "aggregate," *Winer Family Tr.*, 503 F.3d at 337—puts forth facts demonstrating "particularized allegations of a concrete and personal benefit to the individual defendants resulting from the fraud." *In re Bio-Tech. Gen. Corp. Sec. Litig.*, 380 F. Supp. 2d 574, 586–87 (D.N.J. 2005). Defendants devote a significant portion of their Motion arguing that Plaintiffs' suggested motives and scienter are irrational. (*See* Moving Br. at 16 ("[T]he facts alleged show that Mallinckrodt and Defendants believed the 2020 Bankruptcy improved the Company's balance sheet and positioned it for success, but declining sales in 2022 and 2023, rising interest rates, the Company's substantial debt obligations, and other factors, led to a second bankruptcy filing in 2023 that wipes out the equity held by Defendants and others.").) Notwithstanding Defendant's competing narrative, the Court finds that Plaintiffs' inferences are "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *See Tellabs*, 551 U.S. at 314. All that is required at this stage of the proceedings is that Plaintiffs plead particularized facts to support a strong inference of scienter, which the Court concludes they have done. *See Wilson v. Bernstock*, 195 F. Supp. 2d 619, 633 (D.N.J. 2002).

Contrary to Defendants' contentions, the allegations in the Amended Complaint show scienter as to each individual Defendant. The statements further set forth reasons why each defendant knew or recklessly disregarded the facts explained. For example, the Amended Complaint alleges:

Defendants each had scienter as to the false and misleading nature of their statements because they each knew or, at a minimum, recklessly disregarded the facts described above for the following reasons.

a. Defendants had been closely examining the Company's financial condition in concert with investment banker Guggenheim Securities, beginning on October 1, 2022.

b. Defendants had engaged in a top-to-bottom strategic review from the end of 2022 into spring 2023.

c. From his first earnings call with investors and analysts at Mallinckrodt, Olafsson touted his prior experience working closely with Bisaro, apprising investors that their working relationship "will be deeply beneficial to our work to put Mallinckrodt on the path to long-term value creation."

d. Defendants educated themselves on the Company's financial condition before repeatedly assuring investors that the Company was achieving its financial goals and could operate as a going concern.

e. Defendants Olafsson and Reasons signed SOX certifications attached to SEC filings that they knew contained material misstatements.

(Am. Compl. ¶ 196.)  This allegation expressly names Olafsson, Reasons, and Bisaro, and when read together with the allegations previously made in the Amended Complaint, provide a strong inference of scienter.

Admittedly, some of Plaintiffs' reasons for scienter are that Defendants had a strong incentive for compensation, which is not sufficient to support an inference of scienter.  *Wilson*, 195 F. Supp. 2d at 635.  Thus, the Court's conclusion that the scienter requirement was pled properly is not based on the information provided in Paragraph 60 of the Amended Complaint. However, other allegations in the Amended Complaint support an inference of scienter.  For example,

> additional factors support a strong inference of Defendants' scienter, including: (i) the losses each Defendant would experience if the stock options they were awarded at the end of the First Bankruptcy were extinguished if the Company filed for bankruptcy too quickly after it emerged from the First Bankruptcy, when creditors were unlikely to reward Defendants for steering the Company back into bankruptcy so quickly; (ii) Defendants needed to keep the truth from emerging for at least 180 days to avoid the potential of revocation of approval of the First Bankruptcy Plan pursuant to 11 U.S.C. § 1144; (iii) Defendants Olafsson, Reasons, and Bisaro's high-level positions within Mallinckrodt; and (iv) that the misstatements and omissions of material facts concern the Company's core operations, about which Defendants were repeatedly questioned and spoke on.

(*Id.* ¶ 197.)

Moreover, it was alleged that "Defendants knew full well that interest rates were going to rise when Mallinckrodt was emerging from the First Bankruptcy," (*id.* ¶ 117), and that "Defendants simply could not have believed" that the Company's sources of liquidity were adequate for the future "because according to the Goodson Declaration, at essentially the same time Defendants were making these statements, "the Company was presently insolvent comparing its value as a going concern to the face amount of its debt and settlement obligations," (*id.* ¶ 184). These allegations, when read with the rest of the Complaint, create a strong inference of scienter and are sufficient at this stage of the proceedings. Again, the Court's conclusion has no bearing on whether Plaintiffs will ultimately be able to prove scienter. That is for discovery. All the Court concludes today is that the facts as pled support a strong inference of scienter even when considering opposing inferences.

### 3.    PSLRA Safe-Harbor

Lastly, Defendants argue that many of their statements are not misleading because they are forward-looking opinions protected by *Omnicare* and the PSLRA's safe-harbor provision. (Moving Br. at 16, 19–20.) The Court rejects this argument.

"In addition to establishing a heightened pleading standard, the PSLRA provides a so-called 'safe harbor' that immunizes certain 'forward-looking' statements from §10(b) liability." *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016). "The term 'forward-looking statement' is broadly defined" in the PSLRA. *See Avaya*, 564 F.3d at 255. The definition captures a wide range of statements, including those "containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items"; statements of "the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer"; or statements of "future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the [SEC]." *Id.* (quoting 15 U.S.C. § 78u-5(i)(1)(A)-(D)). "[A] mixed present/future statement is not entitled to the safe harbor with respect to the part of the statement that refers to the present." *Id.* (quoting *Makor Issues & Rights, Ltd. v. Tellabs Inc. (Tellabs II)*, 513 F.3d 702, 708 (7th Cir. 2008)).

Furthermore, like forward-looking statements, opinions, and beliefs, a defendant may not be held liable for an alleged misrepresentation that consists of nothing more than vague and nonspecific expressions of corporate optimism. *In re Advanta*, 180 F.3d at 538. Such statements "constitute no more than 'puffery' and are understood by reasonable investors as such." *Id.* (quoting *Burlington*, 114 F.3d at 1428 n.14). Thus, if a false or misleading statement is "too vague to ascertain anything on which a reasonable investor might rely," it is inactionable as corporate puffery. *In re Aetna, Inc, Sec. Litig.*, 617 F.3d 272, 284 (3d Cir. 2010).

Here, Defendants contend that "[m]uch of Plaintiffs' [Amended] Complaint challenges statements by Defendants that are protected by the [PSLRA's] safe harbor for forward-looking

disclosures." (Moving Br. at 16.)  However, contrary to Defendants' arguments, the statements cited in the Amended Complaint, when read as a whole, appear to be more than mere opinions, beliefs, or future projections of the company.  The Court recognizes that puffery and corporate optimism are permissible, but nevertheless finds that the Amended Complaint sufficiently pleads a securities violation to move passed the motion to dismiss stage.  Many of the "optimistic" statements, when read together with the background facts, demonstrate that Defendants likely knew contradictory facts and/or acted recklessly in making such statements, especially after emerging from bankruptcy.  To a reasonable investor, the statements in the Amended Complaint create an illusion that the Company was thriving, when indeed, it was not.  Thus, the statements are more than mere corporate optimism, puffery, and projections about the finances and profits of the Company.  Moreover, many of the statements alleged contain "mixed present/future statement[s]" which are not entitled to the PSLRA's safe-harbor provision.  (*See e,g.,* Am. Compl. ¶¶ 145, 147, 164, 165, 178, 180, 181, 184.)  Further, the Court agrees with Plaintiffs that simply because Defendants stated "I believe" in some of their statements does not make those statements protected by the PSLRA's safe-harbor provision.

Again, the Court emphasizes that it makes no finding or conclusion as to whether Plaintiffs will ultimately succeed on the merits of their Section 10b and 10b-5 actions.  All the Court concludes today is that Plaintiffs have pled sufficiently to survive a motion to dismiss.

**B.    Violation of Securities Exchange Act Section 20(a) (Count II)**

Moving to Count II, to survive a motion to dismiss, a plaintiff bringing an action under Section 20(a) of the Securities Exchange Act must plead: "(1) an underlying primary violation by a controlled person or entity; (2) that [the defendants] exercised control over the primary violator; and (3) that the [d]efendants, as controlling persons, were in some meaningful sense culpable

participants in the fraud." *Wilson*, 195 F. Supp. 2d at 642.  In other words, "[l]iability under Section 20(a) is predicated upon an independent violation of [the Securities Exchange Act] or the rules or regulations thereunder."  *Id.* (quoting *In re Party City Secs. Litig.*, 147 F. Supp. 2d 282, 317 (D.N.J. 2001) (internal quotation marks omitted)).  Under Section 20(a), a plaintiff may bring a cause of action against individuals who control a corporation that has violated Section 10(b), 15 U.S.C. § 78t(a), but "liability under Section 20(a) is derivative of an underlying violation of Section 10(b) by the controlled person." *Avaya*, 564 F.3d at 252.

Defendants argue that without a primary violation of Section 10(b), a violation of Section 20(a) fails.  (Moving Br. at 30.)  The Court rejects this argument given that is has found that Plaintiffs sufficiently pled a primary violation.

## V.    CONCLUSION

For the reasons stated above, the Court will deny Defendants' Motion.  An appropriate Order will follow.


Date: **September 23, 2024**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**