**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| CONTINENTAL GENERAL INSURANCE COMPANY and PERCY ROCKDALE, LLC, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> SIGURDUR OLAFSSON, BRYAN M. REASONS, and PAUL BISARO, <br><br> Defendants. | Case No. 3:23-cv-03662-ZNQ-JBD |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND <u>AWARDS FOR PLAINTIFFS</u>**

{00494567;2 }

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.    ARGUMENT............................................................................................5

    a.    The Court Should Award the Reasonable Percentage of the Common Fund Proposed Here for Attorneys' Fees to Plaintiffs' Counsel. .........5

    b.    Analysis of the Relevant Factors Confirms that the Requested Fee Is Reasonable.........................................................................................8

        1.    Awards at or Above the Requested Fee Amount are Routinely Granted in Similar Cases. ...........................................................9

        2.    Skill and Efficiency of Attorneys and the Complexity and Duration of the Litigation Favor the Requested Fee. ...............10

        3.    Risk of Non-Payment Favors the Requested Fee Here. ...........12

        4.    The Size of the Fund Also Weighs in Favor of the Requested Fee. ........................................................................................15

        5.    Time Devoted to the Litigation and the Lodestar Cross-Check Here Support the Fee Application. ..........................................16

        6.    Analysis of the Value of Benefits Attributable to the Efforts of Class Counsel Relative to the Efforts of Other Groups Supports the Fee Application. ...............................................................17

        7.    The Lack of Objections or Requests for Exclusion Also Strongly Supports the Fee Application. ...................................18

    c.    Plaintiffs' Counsel's Expenses were Reasonably Incurred and Necessary to the Prosecution of this Litigation. ...............................19

    d.    The Proposed Compensatory Award to Plaintiffs Should Be Granted. .................................................................................................20

III.    CONCLUSION.....................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ...................................................................14

*Aponte v. Comprehensive Health Mgmt., Inc.*,
2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) ...............................................17

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)....................................................................................5

*Blum v. Stenson*,
465 U.S. 886 (1984)................................................................................5, 10

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)....................................................................................5

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...............................................13

*Cont'l Gen. Ins. Co. v. Olafsson*,
2024 WL 4263211 (D.N.J. Sept. 23, 2024) .................................................12

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .......................................................................13

*Fogarazzo v. Lehman Bros.*,
2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) .................................................9

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) .....................................................................4, 5

*Hegab v. Fam. Dollar Stores, Inc.*,
2015 WL 1021130 (D.N.J. Mar. 9, 2015) .....................................................5

*Hensley v Eckerhart*,
461 U.S. 424 (1983).....................................................................................15

*Huffman v. Prudential Ins. Co. of Am.*,
No. 2:10-CV-05135, 2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) ..............3, 9

ii

*In re Alstom S.A. Sec. Litig.*,
   741 F. Supp. 2d. 469 (S.D.N.Y. 2010) ...............................................................14

*In re AremisSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002)...........................................................................16

*In re AT&T Corp. Secs. Litig.*,
   455 F.3d 160 (3d Cir. 2006) ..........................................................7, 8, 11, 16

*In re Corel Corp. Inc. Sec. Litig.*,
   293 F. Supp. 2d 484 (E.D. Pa. 2003)............................................................3, 12

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
   582 F.3d 524 (3d Cir. 2009) ...............................................................................8

*In re Domestic Drywall Antitrust Litig.*,
   2018 WL 3439454 (E.D. Pa. July 17, 2018) ......................................................6

*In re E. W. Blanch Holdings, Inc. Sec. Litig.*,
   2003 WL 23335319 (D. Minn. June 16, 2003) .................................................10

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
   2012 WL 6184269 (D.Mass. 2012) ...................................................................21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).....................................................11

*In re Gen. Instrument Sec. Litig.*,
   209 F. Supp. 2d 423 (E.D. Pa. 2001)..................................................................3

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................9

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005).....................................................9

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)..............................................................6, 10, 16

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003) ..............................................................19

*In re Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. 2012)..............................................................................9, 10

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...............................................14, 21

*In re Metlife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...................................................................13

*In re Milken & Associates Sec. Litig.*,
  150 F.R.D. 46 (S.D.N.Y. 1993) .............................................................................11

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ...............................................................................4, 16

*In re Rite Aid Corp. Sec. Litig.*,
  362 F. Supp. 2d 587 (E.D. Pa. 2005).....................................................................16

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ....................................................................................7

*In re Silvercorp Metals, Inc. Sec. Litig.*,
  No. 12-cv-9456, slip op. (S.D.N.Y. February 13, 2014) ......................................20

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...................................................................12

*In re Toronto-Dominion Bank Sec. Litig.*,
  2019 WL 12323620 (D.N.J. Oct. 4, 2019) ........................................................4, 20

*In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*,
  2022 WL 525807 (D.N.J. Feb. 22, 2022) .................................................................4

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)............................................................7

*In re Veritas Software Corp. Sec. Litig.*,
  396 F. App'x 815 (3d Cir. 2010) ..............................................................................3

*In re Vivendi Universal, S.A., Sec. Litig.*,
  2012 WL 362028 (S.D.N.Y. Feb. 6, 2012), *reconsideration denied*,
  861 F. Supp. 2d 262 (S.D.N.Y. 2012) ...................................................................13

iv

*In re Xcel Energy, Inc.*,
364 F. Supp. 2d 980 (D. Minn. 2005)..................................................................14

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................10

*Matter of Cont'l Illinois Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ..............................................................................13

*McKenzie Const., Inc. v. Maynard*,
758 F.2d 97 (3d Cir. 1985) ..................................................................................12

*Morrison v. Nat'l Bank of Austl.*,
561 U.S. 247 (2010)..............................................................................................14

*Robbins v. Koger Props.*,
116 F.3d 1441 (11th Cir. 1997) ...........................................................................14

*Silverberg v. People's Bank*,
23 F. App'x 46 (2d Cir. 2001) ...............................................................................9

*Stevens v. SEI Invs. Co.*,
2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ..........................................................3

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005)........................................................................19, 20

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
66 F.3d 314 (3d Cir. 1995) ..................................................................................16

**Statutes**

15 U.S.C. § 78u-4................................................................................................6, 20

Private Securities Litigation Reform Act of 1995 .........................................6, 7, 20

**Rules**

FED. R. CIV. P. 1 ....................................................................................................16

**Other Authorities**

JANEEN MCINTOSH & SVETLANA STARYKH, RECENT TRENDS IN
SECURITIES CLASS ACTION LITIGATION: 2024 FULL-YEAR REVIEW
(NERA Jan. 22, 2025)........................................................................................15

Co-Lead Plaintiffs Continental General Insurance Company and Percy Rockdale, LLC (collectively, "Plaintiffs"), respectfully submit this Memorandum of Law in support of their unopposed Motion for an Award of Attorneys' Fees and Expenses and Compensatory Awards to Plaintiffs.[1]

## I.    INTRODUCTION

Plaintiffs have obtained a cash Settlement of $5,500,000 for the benefit of the Class to resolve this securities class action against Defendants Sigurdur Olafsson, Bryan M. Reasons, and Paul Bisaro (collectively, "Defendants").  As explained in the contemporaneously filed submissions in support of the Settlement, Plaintiffs achieved this favorable result despite serious obstacles to recovery, reflecting the vigorous and diligent prosecution of the litigation by Lead Counsel Pomerantz LLP ("Pomerantz") and Additional Counsel DJS Law Group ("DJS," together, Plaintiffs' Counsel).  Plaintiffs' Counsel, who have received no payment to date, now move for an award of 33.33% of the $5,500,000 recovered for the Class, a fee of $1,833,333.33.   This request is consistent with Plaintiffs' Counsel's retainer agreements with Plaintiffs, and all Plaintiffs have determined that request to be reasonable.  *See* Declaration of Michael Gorzynski in Support of Lead Plaintiff

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings in the fully executed Stipulation of Settlement dated May 23, 2025 ("Stipulation") (Dkt. No. 46-3).

1

Continental General Insurance Company's Motions for (1) Final Approval of Proposed Settlement; and (2) Award of Attorneys' Fees and Expenses, and Awards for Plaintiffs, attached as Ex. D to the Declaration of Brian Calandra dated October 22, 2025, submitted herewith; Declaration of Michael Gorzynski in Support of Lead Plaintiff Percy Rockdale, LLC's Motions for (1) Final Approval of Proposed Settlement; and (2) Award of Attorneys' Fees and Expenses and Awards for Plaintiffs, attached as Ex. E to the Declaration of Brian Calandra dated October 22, 2025, submitted herewith.

In addition, Plaintiffs' Counsel respectfully request reimbursement of $289,981.79 in expenses that they reasonably and necessarily incurred in prosecuting this litigation.[2] *See* Declaration of Brian Calandra Regarding Fees and Expenses of Pomerantz LLP ("Pomerantz Decl.," attached to the Calandra Decl. as Ex. 2) ¶6; Declaration of David J. Schwartz Regarding Fees and Expenses of DJS Law Group ("DJS Decl.," attached to the Calandra Decl. as Ex. 3) ¶7.

---

[2] The Calandra Declaration and the fee declarations attached thereto are an integral part of this submission. Plaintiffs respectfully refer the Court to them for a detailed description of the factual and procedural history of the Action, the claims asserted, Plaintiffs' and Plaintiffs' Counsel's investigation and litigation efforts, the negotiations leading to the Settlement, and the fairness and reasonableness of the Settlement, the Plan of Allocation, and counsel's request for an award of attorneys' fees and expenses and compensatory awards for each Plaintiff.

The requested award is reasonable under the percentage-of-recovery method favored in the Third Circuit.  Fees equal to 33% of the total settlement are often granted in securities fraud class actions.[3]  *See, e.g.*, *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 497-98 (E.D. Pa. 2003) (awarding 33.3% of $7 million settlement); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433-34 (E.D. Pa. 2001) (awarding one-third of a $48 million settlement and collecting cases); *see also Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-CV-05135, 2019 WL 1499475, at *7 (E.D. Pa. Apr. 5, 2019) ("one-third of the settlement fund . . . is the 'benchmark' percentage for an award to counsel").

A lodestar cross-check confirms the reasonableness of the fee request.  Third Circuit precedent makes plain that percentage awards resulting in multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."  *In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 819 (3d Cir. 2010); *see also Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (approving fee award resulting in a multiplier of 6.16; "multiples ranging from 1 to 8 are often used in common fund cases" to "compensate counsel for the risk of assuming the representation on a contingency fee basis").  Here, Plaintiffs' Counsel have spent, in the aggregate, 707.22 hours in the

---

[3] Unless otherwise noted, all internal quotations and citations are omitted.

prosecution of this case against Defendants, with a lodestar of $668,154.00. *See* Calandra Decl. ¶ 65. This results in a multiplier of 2.74, which provides "strong evidence that the requested fees are reasonable." *In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*, 2022 WL 525807, at *7 (D.N.J. Feb. 22, 2022).

That no Class Members objected after receiving Notice that Plaintiffs' counsel would seek 33.33% (or one-third) of the settlement for attorney fees and reimbursement of expenses also strongly weighs in favor of the requested fees. *See* Section III(b)(7), *infra.* Additionally, other factors identified as relevant by the Third Circuit in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 197–99 (3d Cir. 2000) and *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 336–40 (3d Cir. 1998), support the requested fee award.

Plaintiffs also request that their significant contributions to the successful settlement of this case be recognized. Each has conferred with Plaintiffs' Counsel on numerous occasions. Each had discussions about the claims, litigation, and settlement strategies, reviewed filings, produced documents, and provided authorization to Plaintiffs' Counsel for the amounts to be sought in the settlement negotiations. Therefore, Plaintiffs' Counsel requests that each of the two co-Lead Plaintiffs receive a compensatory award of $10,000, an amount both reasonable and well-deserved here. *See, e.g.*, *In re Toronto-Dominion Bank Sec. Litig.*, 2019 WL 12323620, at *4 (D.N.J. Oct. 4, 2019) (awarding lead plaintiffs $15,000 each).

4

## II.    ARGUMENT

### a.    The Court Should Award the Reasonable Percentage of the Common Fund Proposed Here for Attorneys' Fees to Plaintiffs' Counsel.

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  This ensures that "competent counsel continue to be willing to undertake risky, complex, and novel litigation." *Gunter*, 223 F.3d at 198.  The Supreme Court has repeatedly underscored the importance of this purpose, noting that private securities actions, such as this one, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).  "The awarding of fees is within the discretion of the Court, so long as the Court employs the proper legal standards, follows the proper procedures, and makes findings of fact that are not clearly erroneous." *Hegab v. Fam. Dollar Stores, Inc.*, 2015 WL 1021130, at *10 (D.N.J. Mar. 9, 2015) (citing *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727 (3d Cir. 2001)).

Where counsel has created a common fund, attorneys' fees should be determined on a percentage-of-recovery basis. *See Blum v. Stenson*, 465 U.S. 886,

900 n.16 (1984) ("under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class").  The Third Circuit has similarly held that "[t]he percentage-of-recovery method is favored in class action settlements involving a common fund, allowing the court to award attorneys' fees 'in a manner that rewards counsel for success and penalizes it for failure.'"  *In re Domestic Drywall Antitrust Litig.*, 2018 WL 3439454, at *2 (E.D. Pa. July 17, 2018) (citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995)).  The theory underlying the use of the percentage-of-recovery method is that "the class would be unjustly enriched if it did not compensate the counsel responsible for generating the valuable fund bestowed on the class."  *Id.; see also In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 193 (E.D. Pa. 2000) (noting that the percentage-of-recovery method "permits courts to reward success and penalize failure more directly" than a lodestar determination).

The determination of attorneys' fees using the percentage-of-recovery method is also supported by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6). Some courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method in assessing fees

6

for securities class actions. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at \*3 (S.D.N.Y. Nov. 7, 2007) (noting that the PSLRA appears to favor the percentage method because it "provides that an award of fees and expenses should constitute 'a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class'").

The lodestar method, which involves multiplying the number of hours reasonably expended by a reasonable hourly rate and then applying a multiplier intended to "account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work," is often then used "to cross-check the reasonableness of a percentage-of-recovery fee award." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305–06 (3d Cir. 2005). However, "[t]he lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006).

Given that both the Supreme Court and the Third Circuit favor the percentage method in determining attorneys' fees in common fund cases, Plaintiffs' Counsel respectfully submits that the Court should award attorneys' fees based on a reasonable and commonly awarded percentage of the fund recovered for the Class under similar circumstances.

7

**b.    Analysis of the Relevant Factors Confirms that the Requested Fee Is Reasonable.**

The requested attorneys' fees are supported by the factors the Third Circuit has identified as relevant (the "*Gunter*/*Prudential* factors") to this Court's determination of award: "(1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement." *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *Gunter*, 223 F.3d at 195 and *Prudential*, 148 F.3d at 336-40). These factors "need not be applied in a formulaic way because each case is different, and in certain cases, one factor may outweigh the rest." *In re AT&T Corp. Secs. Litig.*, 455 F.3d at 166. Here, consideration of each of these factors points to the fairness and reasonableness of the requested fee.

8

### 1. Awards at or Above the Requested Fee Amount are Routinely Granted in Similar Cases.

When considering the amount awarded in similar actions, a court should "(1) compare the actual award requested to other awards in comparable settlements; and (2) ensure that the award is consistent with what an attorney would have received if the fee were negotiated on the open market." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 122 (D.N.J. 2012).

While there is no absolute rule, courts in this Circuit generally award fees approximating one-third of the settlement fund for settlements under $50 million. *See, e.g.*, *Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-CV-05135, 2019 WL 1499475, at *7 (E.D. Pa. Apr. 5, 2019) (stating that "[p]ercentage fee awards in common fund cases often fall between nineteen and forty-five percent of the settlement fund. Class Counsel request one-third of the settlement fund, which is the 'benchmark' percentage for an award to counsel. Courts within the Third Circuit routinely award fees at similar percentages" and citing cases).

Other circuits are in accord. *See Silverberg v. People's Bank*, 23 F. App'x 46, 47-49 (2d Cir. 2001) (affirming an award of nearly 33%); *Fogarazzo v. Lehman Bros.*, 2011 WL 671745, at *3-4 (S.D.N.Y. Feb. 23, 2011) (awarding 33.3% of a $6.75 million settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163–65 (S.D.N.Y. 2011) (awarding 33% of a $13 million settlement); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005) (awarding

9

33.3% of a $27.78 million settlement); *In re E. W. Blanch Holdings, Inc. Sec. Litig.*, 2003 WL 23335319, at *3 (D. Minn. June 16, 2003) (awarding 33.3% of a $20 million settlement); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367-74 (S.D.N.Y. 2002) (awarding 33.3% of a $11.5 million settlement).

The fees requested here are consistent with what counsel would receive if they were bargaining in the legal marketplace outside of securities litigation as well. In non-class-action tort litigation, "plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery." *In re Ikon Sec. Litig.*, 194 F.R.D. at 194; *see also Blum v. Stenson*, 465 U.S. 886, 903 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring); *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. at 122-23 (collecting cases).

### 2. Skill and Efficiency of Attorneys and the Complexity and Duration of the Litigation Favor the Requested Fee.

The complexity of the case and the quality of the representation provided by Plaintiffs' Counsel also support the reasonableness of the requested fee here. This case raised difficult legal and factual issues that required creativity and a wealth of litigation experience from which to drawn on to position the case for continued litigation or favorable settlement. In addition to being skilled and working efficiently on federal securities laws and class action litigation more generally,

10

Plaintiffs' Counsel here had to master complex issues regarding, *inter alia*, bankruptcy law and practice, and standards for accounting for liquidity and cash.

Moreover, unique issues made this case particularly complex and difficult. The corporate defendant was dismissed from the case due to pending bankruptcy, limiting recovery to the individual Defendants. Thus, even if Plaintiffs prevailed on liability at trial, the Class may well have obtained a judgment for only a fraction of the damages claimed. *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *27-28 (S.D.N.Y. Nov. 8, 2010) (evidentiary burden of proving damages weighed in favor of approving fee request); *In re Milken & Associates Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement for a fraction of damages sought because the magnitude of damages often becomes a "battle of experts...with no guarantee of the outcome").

Establishing scienter also remained a challenge throughout this litigation. Plaintiffs would have to demonstrate at trial not only that statements about Mallinckrodt's cash in hand and liquidity were materially wrong but also that they were intentionally or recklessly misstated. *See In re AT&T Corp. Secs. Litig.*, 455 F.3d at 170 (emphasizing that "the difficulty of proving actual knowledge under §10(b) of the Securities Exchange Act . . . weighed in favor of approval of the fee request"). Indeed, the Court cautioned that "the Court's conclusion has no bearing

11

on whether Plaintiffs will ultimately be able to prove scienter." *Cont'l Gen. Ins. Co. v. Olafsson*, 2024 WL 4263211, at *10 (D.N.J. Sept. 23, 2024).

In the face of such challenges, Plaintiffs' Counsel's hard work, persistence, and skill resulted in the efficient recovery of $5.5 million for the Class. "[A] prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice." *McKenzie Const., Inc. v. Maynard*, 758 F.2d 97, 101–02 (3d Cir. 1985). This excellent result is consistent with Plaintiffs' Counsel's well-earned national reputation for the successful representation of clients in complex class action matters. *See* Pomerantz Decl. at Ex. C (Pomerantz Resume).

Defendants were vigorously represented by experienced and qualified attorneys at Hogan Lovells US LLP achieved this Settlement for the Class "in the face of formidable legal opposition further evidences the quality of their work." *In re Corel Sec. Litig.*, 293 F. Supp. 2d at 496.

Accordingly, the quality Plaintiffs' Counsel's representation in such a highly complex, risky case strongly supports the requested fee.

### 3.    Risk of Non-Payment Favors the Requested Fee Here.

"Courts have repeatedly recognized that 'the risk of the litigation' is a pivotal factor in assessing the appropriate attorneys' fees to award to plaintiffs' counsel in class actions." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008). "No one expects a lawyer whose compensation is contingent upon his

12

success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).  The need for a contingency adjustment "is particularly acute in class action suits.  The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent." *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 569 (7th Cir. 1992); *see also In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 361 (E.D.N.Y. 2010) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation").

Securities class actions are notoriously unpredictable.  Even where ultimately successful, they can last many years longer than anyone anticipated, during which time plaintiffs' counsel must devote thousands of attorney hours, pay overhead, and advance litigation costs (including for experts).  Thus, "the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014) (describing the ways in which the burden of a contingent-fee arraignment is greater than a firm that is being paid hourly rates).  Even a successful jury verdict can take years to collect.  *See, e.g.*, *In re Vivendi Universal, S.A., Sec. Litig.*, 2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) (noting that two years after jury verdict in

13

plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery), *reconsideration denied*, 861 F. Supp. 2d 262 (S.D.N.Y. 2012).

Counsel in securities class actions accepting a contingency arrangement face a very real risk of no recovery at all. "Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005); *see also In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (collecting cases). Even plaintiffs who obtain substantial jury verdicts at trial may find their judgment overturned on appeal or on a post-trial motion. *See, e.g.*, *Robbins v. Koger Props.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (overturning an $81 million jury verdict for plaintiffs and rendering judgment for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning a $40 million jury verdict for plaintiffs, in a case filed in 1973 and tried in 1988, on the basis of a 1994 Supreme Court opinion). Similarly, even the most promising cases can be eviscerated by a sudden change in the law after years of litigation. *See, e.g.*, *In re Alstom S.A. Sec. Litig.*, 741 F. Supp. 2d. 469, 473 (S.D.N.Y. 2010) (after extensive foreign discovery, 95% of plaintiffs' damages were eliminated by the Supreme Court's reversal of 40 years of unbroken circuit-court precedents in *Morrison v. Nat'l Bank of Austl.*, 561 U.S. 247 (2010)).

14

### 4.    The Size of the Fund Also Weighs in Favor of the Requested Fee.

The result achieved is one of the primary factors to be considered in assessing the propriety of an attorneys' fee award. *Hensley v Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"). Here, the Settlement provides $5.5 million for the benefit of thousands of investors, which recovers approximately 15.24% of Plaintiffs' maximum recoverable damages. It is all cash, with no reversion to Defendants, and it provides Settlement Class Members with meaningful compensation that was otherwise uncertain when the case began. Indeed, such recovery is well above the median settlement of securities class actions between 2015 and 2024. *See* JANEEN MCINTOSH & SVETLANA STARYKH, RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: 2024 FULL-YEAR REVIEW (NERA Jan. 22, 2025), at 27 (Fig. 24) (showing the median settlement value in securities class actions in 2024 was 1.2% of estimated damages, and for cases between 2015–23 the median settlement value ranged between 1.5% and 2.5% of estimated damages).[4] In light of the factual complexity of this case and the challenges detailed above, this is an excellent result that strongly supports the requested fee.

---

[4] *See* https://www.nera.com/content/dam/nera/publications/2025/PUB_2024_Full-Year_Sec_Trends_0122.pdf.

15

### 5.    Time Devoted to the Litigation and the Lodestar Cross-Check Here Support the Fee Application.

Throughout the litigation, Plaintiffs' Counsel have focused on seeking the most successful outcome for the Class, whether through settlement or trial, as efficiently as possible.  Indeed, early settlements are encouraged by courts and are consistent with the Federal Rules of Civil Procedure, which emphasize the "just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1.

Plaintiffs' Counsel and their professionals have spent, in the aggregate, 707.22 hours litigating this case against Defendants, with a lodestar of $668,154.00. Calandra Decl.  ¶65. The requested fee would therefore result in a multiplier of 2.74. The multiple is also consistent with multipliers of one to four typically applied in common fund cases.  *Prudential*, 148 F.3d at 341; *see also In re AT&T Secs. Litig.*, 455 F.3d at 172 (noting the Third Circuit's prior "approv[al] of a lodestar multiplier of 2.99 in . . . a case [that] 'was neither legally nor factually complex.'"); *Weiss v. Mercedes-Benz of N. Am., Inc.*, 66 F.3d 314 (3d Cir. 1995) (affirming a multiplier of 9.3); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (multiplier of 6.96); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (multiplier of 4.3); *In re Ikon Sec. Litig.*, 194 F.R.D. at 195 (noting a multiplier of 2.7 was "well within the range of those awarded in similar cases").

Moreover, Plaintiffs' Counsel's legal work will not end with the Court's approval of the Settlement.  Significant additional hours and resources will

necessarily be expended assisting Class Members with their Proofs of Claim, shepherding the claims process, and responding to Class Member inquiries. *See Aponte v. Comprehensive Health Mgmt., Inc.*, 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request."). Accordingly, the time and effort devoted to this case by Plaintiffs' Counsel to obtain the $5,500,000 recovery confirms that the requested fee is thus manifestly reasonable, whether calculated as a percentage of the fund or in relation to Plaintiffs' Counsel's lodestar.

**6.    Analysis of the Value of Benefits Attributable to the Efforts of Class Counsel Relative to the Efforts of Other Groups Supports the Fee Application.**

The Third Circuit has advised district courts to examine whether class counsel benefited from a governmental investigation or enforcement action concerning the alleged wrongdoing, which can indicate how much credit counsel should be given for obtaining the value of the settlement fund for the class.

This case does not rely on *any* investigative reports or enforcement actions by any governmental entity. Instead, the value of the Settlement achieved is directly attributable solely to the efforts undertaken by Plaintiffs' Counsel in this Action,

17

including an extensive investigation across related to filing an amended complaint, which supports the reasonableness of the requested fee award.

**7.    The Lack of Objections or Requests for Exclusion Also Strongly Supports the Fee Application.**

The positive reaction from Class members confirms the quality of Plaintiffs' Counsel's representation and strongly supports approval of the fee request. As of October 29, 2025, Angeion Group ("Claims Administrator") has mailed or emailed 14,393 Postcards advising Class Members, brokers, and nominee holders of the Settlement and directing them to a settlement website, https://mallinckrodtcontinentalsecuritiessettlement.com/, that provides the Long Form Notice and all other relevant documents. *See* Cody Decl., Ex. 1 to Calandra Decl. at ¶11. The Claims Administrator also published in print and by wire the Summary Notice, also advising about the details of the Settlement and directing Class Members to the website for additional details. *See id.* at ¶12. The Long Form Notice amply describes the terms of the Settlement, including (a) the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) the process to opt-in or opt-out of, or object to, the Settlement; (e) a description of the Plan of Allocation; (f) that Class Counsel intended to seek fees of up to 33.33%, reimbursement of expenses of up to $350,000, and awards for Lead Plaintiffs of up to $10,000 each; and (g) the necessary

18

information for any Class Member to examine the Court records should they desire to do so.  *See* www.MallinckrodtContinentalSecuritiesSettlement.com.

While the exclusion and objection deadline is not until November 12, 2025, no Class Members have objected to the Settlement or the fee and expense request, and no exclusion requests were received.[5]  Calandra Decl. at Ex. 1 ¶¶17-18.  The lack of any negative feedback after such extensive notice suggests that the Class generally and overwhelmingly approves of the settlement.  *See Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 237-38 (D.N.J. 2005) (finding exclusion and objection requests of 0.06% and 0.003%, respectively, "extremely low" and indicative of class approval of the settlement).

### c. Plaintiffs' Counsel's Expenses were Reasonably Incurred and Necessary to the Prosecution of this Litigation.

Plaintiffs' Counsel also respectfully requests $289,981.79 in expenses incurred while prosecuting this litigation.  These expenses are categorized in the Pomerantz Declaration.  *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable expenses necessary to the representation of the class).  Most of Plaintiffs' Counsel's modest expenses are the costs of the investigation in Plaintiffs' claims,

---

[5] If additional objections are filed, Plaintiffs' Counsel will address them in their reply brief.

19

experts to assess damages, market efficiency, and loss causation, as well as other smaller expenses such as filing fees, electronic research, and reasonably necessary travel. These expenses were necessary to Plaintiffs' success in achieving the Settlement. It is well-established that these kinds of expenses are "reasonably incurred in the prosecution of such litigation." *Varacallo*, 226 F.R.D. at 256. To date, while the deadline has not passed, no objections to the expense request have been filed. Accordingly, Plaintiffs' Counsel respectfully request payment for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

### d. The Proposed Compensatory Award to Plaintiffs Should Be Granted.

The PSLRA permits Plaintiffs to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class." 15 U.S.C. § 78u-4(a)(4). In accordance with the PSLRA, and the inherent powers of the Court, courts routinely grant reimbursement of substantial sums to lead plaintiffs and class representatives. *See, e.g.*, *Toronto-Dominion Bank*, 2019 WL 12323620, at *4 (awarding lead plaintiffs $15,000); *In re Silvercorp Metals, Inc. Sec. Litig.*, No. 12-cv-9456, slip op. at 9 (S.D.N.Y. February 13, 2014) (awarding $12,500 to each lead plaintiff).

Here, both Plaintiffs at all times adequately represented the Class. They devoted substantial time and effort to prosecuting this litigation, including time spent

20

reviewing pleadings, motions, and other documents; communicating with counsel concerning the status of the case, discussing settlement authority with counsel, and staying apprised of developments, including settlement discussions.

The foregoing efforts are precisely the types of activities courts have found to support reimbursement to class representatives based on the value of the time expended by their employees. *See, e.g.*, *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 2012 WL 6184269, at *2 (D.Mass. 2012); *In re Marsh & McLennan Companies Sec. Litig.*, 2009 WL 5178546, at *21 (awarding over $200,000 to lead plaintiffs to compensate them "for their reasonable costs and expenses incurred in managing this litigation and representing the Class" and noting that these efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives").

Plaintiffs' Counsel respectfully submit that the relatively modest requests of $10,000 per Plaintiff ($20,000 total) for their time and service to the Class are reasonable and should be granted.

## III.  CONCLUSION

Plaintiffs' Counsel's efforts have resulted in a very favorable result for the Class under the circumstances.  Therefore, they respectfully request that the Court award attorneys' fees of 33.33% of the total recovery of $5,500,000 plus reimbursement of expenses to Plaintiffs' Counsel in the amount of $289,981.79, and

awards to each of the two Plaintiffs in the amount of $10,000.  A proposed order will be submitted with reply papers after the deadline for objections has passed.

Dated: October 29, 2025                      Respectfully submitted,


**POMERANTZ LLP**

By: */s/ Brian Calandra*

Brian Calandra
Jeremy A. Lieberman (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: bcalandra@pomlaw.com
          jalieberman@pomlaw.com


**DJS LAW GROUP**
David J. Schwartz
274 White Plains Road, Suite 1
Eastchester, New York 10709
Telephone: (914) 206-9742
david@djslawllp.com

*Counsel for Lead Plaintiffs Continental General Insurance Company and Percy Rockdale, LLC*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of the foregoing Memorandum of Law in Support of Co-Lead Plaintiffs' Unopposed Motion for an Award of Attorneys' Fees and Expenses and Awards for Co-Lead Plaintiffs to be served on Defendants on October 29, 2025 via ECF.

DATED: October 29, 2025          */s/ Brian Calandra*
                                 Brian Calandra