## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CONTINENTAL GENERAL INSURANCE COMPANY and PERCY ROCKDALE, LLC, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

SIGURDUR OLAFSSON, BRYAN M. REASONS, and PAUL BISARO,

Defendants.

Case No. 3:23-cv-03662-ZNQ-JBD

## DECLARATION OF BRIAN CALANDRA IN SUPPORT OF LEAD PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED SETTLEMENT; AND (2) AWARD OF ATTORNEYS' FEES AND <u>EXPENSES, AND AWARDS FOR PLAINTIFFS</u>

# TABLE OF CONTENTS

I.     SUMMARY OF LEAD PLAINTIFF'S CLAIMS ........................................5

II.    PROCEDURAL HISTORY ...............................................................9

III.   THE SETTLEMENT ......................................................................11

     A.    Reasons for the Settlement......................................................11

     B.    Settlement Terms ...................................................................14

IV.   THE COURT'S PRELIMINARY APPROVAL ORDER AND PLAINTIFF'S DISSEMINATION OF NOTICE ........................................15

     A.    Preliminary Approval Order ..................................................15

     B.    Notice ..................................................................................17

     C.    Reaction of the Class.............................................................18

     D.    The Plan of Allocation ..........................................................19

V.     LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSMENT OF EXPENSES ..............23

     A.    Attorneys' Fees ....................................................................23

     B.    Costs and Expenses...............................................................27

VI.   AN AWARD TO THE PLAINTIFFS IS WARRANTED...........................28

i

I, Brian Calandra, declare and state, under penalty of perjury, that the following is true and correct to the best of my knowledge, information, and belief:

1.    I am Of Counsel at Pomerantz LLP ("Pomerantz"), court-appointed Lead Counsel on behalf of Co-Lead Plaintiffs Continental General Insurance Company and Percy Rockdale, LLC (collectively, "Plaintiffs"), in the class action styled as *Continental General Insurance Company et al. v. Olafson et al.*, Civil Action No. 3:23-cv-03662-ZNQ-JBD (D.N.J.) (the "Action").[1]

2.    I am duly admitted to practice before this Court. I have been actively involved in the prosecution of this Action against Defendants Sigurdur Olafsson, Bryan M. Reasons, and Paul Bisaro (collectively, "Defendants") since September 2023, as well as the negotiations resulting in the resolution of this Action, and I have personal knowledge of the matters set forth herein and, if called upon, could and would competently testify thereto.  The statements in this declaration are made based upon my personal knowledge unless otherwise indicated.

3.    I respectfully submit this Declaration ("Decl." or "Declaration") in support of the following: (1) Co-Lead Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement; and (2) Co-Lead Plaintiffs' Unopposed Motion for an Award of Attorneys' Fees and Expenses and Awards to Co-Lead

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings in the fully executed Stipulation of Settlement dated May 23, 2025 ("Stipulation") (Dkt. No. 46-3).

Plaintiffs.  The terms of the Settlement are set forth in the Stipulation. (Dkt. No. 46-3).  The Court preliminarily approved the Stipulation by its Order Preliminarily Approving Settlement and Providing for Notice, filed on February 7, 2022. (Dkt. No. 47, "Preliminary Approval Order").

4.     This Declaration sets forth the nature of the claims asserted, the Action's procedural history, and the methods by which the Settlement Class was notified of the Settlement.  It also demonstrates the reasons why the Settlement and Plan of Allocation are fair, reasonable, and adequate, and why Counsel's application for attorneys' fees, reimbursement of expenses, and awards for Plaintiffs should be approved.

5.     The settlement contemplated by the Stipulation ("Settlement") completely resolves the Action, and provides for a payment of five million and five hundred thousand U.S. dollars ($5,500,000.00) in cash, in exchange for the release of all claims asserted by Plaintiffs against Defendants. While Lead Counsel believe that the allegations in the Consolidated Class Action Complaint (the "Complaint," Dkt. No. 17) have substantial merit, Lead Counsel respectfully submits that the Settlement represents an excellent result for the Class.

6.     The Settlement is the result of extensive arm's-length settlement negotiations among esteemed and experienced counsel.  On January 29, 2025, Lead Counsel and Defendants' Counsel participated in a full-day in-person mediation

2

session before Jed D. Melnick of JAMS ("Melnick"). In advance of that session, the Settling Parties prepared and exchanged detailed mediation statements. The session ended without an agreement, but Melnick remained in contact with the parties, and settlement negotiations continued. After a second, half-day virtual mediation session on April 10, 2025, the Settling Parties agreed in principle on April 14, 2025, to resolve the claims asserted in this Litigation for $5.5 million in return for a release of all claims against Defendants, as further detailed below. The ability of Lead Counsel and Defendants' Counsel to reach a compromise in light of the many complex issues present in this Action—including dismissal of the corporate defendant due to bankruptcy—evidences the skill of representation and the quality of the results.

7. Pursuant to the Preliminary Approval Order, 14,393 Postcard Notices of Proposed Settlement of Class Action ("Postcards") were mailed or emailed to potential Settlement Class Members, brokers, and other nominees. The Notice of Proposed Settlement of Class Action ("Long Form Notice"), the Proof of Claim and Release Form ("Proof of Claim"), and the Summary Notice of Pendency and Proposed Settlement of Class Action and Final Approval Hearing ("Summary Notice," and together with Long Form Notice and Proof of Claim, the "Notice Packet"), the Preliminary Approval Order, and the Stipulation were posted online at www.MallinckrodtContinentalSecuritiesSettlement.com. *See* Declaration of Dawn

3

M. Cody Regarding: (A) Mailing and Emailing of Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections Received to Date, dated October 29, 2025 ("Cody Decl."), submitted as Exhibit ("Ex.") 1 hereto. The Summary Notice was posted in print in the national edition of *Investor's Business Daily* on June 30, 2025 and by wire on *Globe Newswire* on July 2, 2025. *Id.*

8.  For approximately two years prior to the Settlement, Lead Counsel has successfully overcome the significant obstacles that this Action presented and adeptly navigated the complicated issues of law and fact inherent in prosecuting this claim. The Settlement provides an immediate and certain benefit to the Settlement Class, considering the significant risks that a smaller recovery, or no recovery, might be achieved after potential motions for summary judgment and class certification, trial, and the likely appeals that would follow, which could prolong the Action for years. For these reasons and those set forth more fully below, Lead Counsel respectfully submits that the Settlement is in the best interests of the Settlement Class and should be approved as fair, adequate, and reasonable.

9.  Lead Counsel and Additional Counsel, DJS Law Group ("DJS" and, together, "Plaintiffs' Counsel") also respectfully requests that the Court approve the Plan of Allocation for the Settlement proceeds, the award of attorneys' fees in the amount of one million, eight hundred and thirty-three thousand, three hundred and

thirty-three U.S. dollars, and thirty-three cents ($1,833,333.33) plus accrued interest, and reimbursement of expenses in the amount of $289,981.79, as fair and reasonable. The fee award constitutes one-third (33.33%) of the Settlement Fund, which is well within the range of attorneys' fees regularly awarded by courts within the Third Circuit, and reasonable in light of the relevant factors, including the quality of the representation, the complexity of the Action, and the Settlement Class's reaction to the fee request. The expenses incurred were reasonable and necessary to prosecute this Action and to reach this favorable result for the Settlement Class. Counsel also respectfully requests an award of ten thousand U.S. dollars ($10,000.00) to each Plaintiff for their substantial efforts in leading the prosecution of the Action.

## I.    SUMMARY OF LEAD PLAINTIFF'S CLAIMS

10.    Plaintiffs' claims are set forth in the Complaint, which asserts that Defendants made misrepresentations to investors between June 17, 2022, and August 25, 2023, both dates inclusive (the "Class Period").

11.    Specifically, Plaintiffs allege that executives of pharmaceutical company Mallinckrodt Plc ("Mallinckrodt" or the "Company"), which was emerging from Chapter 11 bankruptcy, knew that the Company could not meet its obligations under its bankruptcy plan and assured investors otherwise even though it was planning to re-enter bankruptcy and thereby avoid a substantial portion of the billions of dollars of liability the Company had incurred for addicting the public to

its opioids and improperly billing government entities for its product Acthar Gel ("Acthar"). ¶¶2-5.[2]

12.    By October 2020, Mallinckrodt faced untold billions in liability for opioid and Acthar misconduct and outstanding debts of $5.2 billion. On October 12, Mallinckrodt filed for bankruptcy (the "First Bankruptcy") before the U.S. Bankruptcy Court for the District of Delaware (the "First Bankruptcy Court"). ¶¶57, 60. The proposed bankruptcy plan (the "First Bankruptcy Plan") would significantly reduce Mallinckrodt's liabilities and create a payment schedule for the remaining liabilities, starting with a $200 million payment due on June 2, 2023. ¶¶58-61, 94. The First Bankruptcy Court approved the First Bankruptcy Plan based on certain projections (the "First Plan Forecasts") presented by Mallinckrodt's CRO to support testimony that the Plan would not result in further reorganization or restructuring. ¶¶62-65.

13.    After emerging from Bankruptcy, Defendants assured the market that the newly reorganized Company had sufficient liquidity and was situated for continued financial stability and near-and-long-term success. ¶¶68, 70-91. The Complaint alleged Defendants' strong motivation to "keep the plates spinning" because they risked losing 80% of their anticipated compensation if the Company

---

[2] All "¶__" references in this "Summary of Lead Plaintiffs' Claims" section are to the Complaint.

filed for bankruptcy before their equity interests had a chance to vest. ¶69. However, Defendants allegedly knew that the projections underlying the First Bankruptcy Plan were unattainable and told the market they were not to be relied upon by investors. ¶¶113-31. Indeed, despite Defendants' outward optimism, behind the scenes, they were allegedly already preparing for a Second Bankruptcy. ¶134-35.

14. As the date for the $200 million payment approached in June 2023, the *WSJ* reported that Mallinckrodt had, in fact, begun exploring a second bankruptcy . ¶95. Mallinckrodt shares dropped 40% on the news. ¶¶188-89. On June 14, 2023, Mallinckrodt's board of directors approved executive retention plans that would compensate Defendants for equity lost in a second bankruptcy. ¶¶97-101. When Mallinckrodt disclosed these actions on June 21, 2023, Mallinckrodt shares dropped 15.6%. ¶¶191-92. On August 23, 2023, Mallinckrodt announced the signing of an agreement with lenders to file a "prepackaged" bankruptcy, which it filed on August 28, 2023, making all shares worthless and effectively wiping out any investor who backed the company after the First Bankruptcy based on Defendants' positive statements. ¶¶102-104. The prepackaged bankruptcy prioritized repayment of creditors over opioid victims and provided additional compensation to the Defendants. ¶¶106-07, 137

15.    The Complaint alleges that Defendants' misstatements and omissions to investors violated Sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

16.    Throughout this litigation, Defendants have denied, and continue to deny, that they have committed or intended to commit any wrongdoing or violations of law as alleged in any complaint in the Action, including any allegations of fault, negligence, liability, wrongdoing, or damages whatsoever.  Specifically, Defendants expressly have denied, and continue to deny, that they have committed any act or made any materially misleading statement giving rise to any liability under the federal securities laws.  Defendants expressly have denied, and continue to deny, that they have committed any wrongdoing or violations of law as alleged in any complaint in the Action or that could have been alleged in the Action, and Defendants maintain that their conduct was at all times proper and in compliance with applicable provisions of law.  Defendants also have denied, and continue to deny, that they made any material misstatement or omission or engaged in any fraudulent schemes, that they acted with the requisite state of mind, that the prices of Mallinckrodt securities were artificially inflated during the Settlement Class Period as a result, that any Settlement Class Member, including Plaintiffs, suffered any damages, or that any Settlement Class Member, including Plaintiffs, was harmed

8

by any conduct alleged in the Litigation or that could have been alleged therein.  The Defendants maintain that they have meritorious defenses to all claims alleged in the Litigation.

## II.    PROCEDURAL HISTORY

17.    On July 7, 2023, Plaintiffs commenced this action alleging violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.  Dkt. No. 1.  Plaintiffs brought claims against Mallinckrodt as well as the Individual Defendants.  *Id.*  On September 5, 2023, Plaintiffs filed a motion seeking appointment as Lead Plaintiffs.  Dkt. No. 9.  On September 20, 2023, the Court appointed Plaintiffs as Lead Plaintiffs and approved their selection of Pomerantz LLP ("Pomerantz") as Lead Counsel.  Dkt. No. 11.

18.    Shortly thereafter, Plaintiffs filed a Suggestion of Bankruptcy Upon the Record, informing the Court that Mallinckrodt had filed for bankruptcy, triggering an automatic stay of claims against the Company but not against other Defendants.  Dkt. No. 13.  The Court administratively terminated Mallinckrodt, without prejudice to Plaintiffs' right to renew claims after the conclusion of bankruptcy proceedings.  Dkt. No. 15.

19.    Plaintiffs filed the Complaint on December 26, 2023.  Dkt. No. 17.  On February 26, 2024, Defendants moved to dismiss (Dkt. No. 19), Plaintiffs filed an opposition on May 7, 2024 (Dkt. No. 25), and Defendants filed a reply on June 10,

2024.  Dkt. No. 26.  On September 23, the Court denied the motion to dismiss as to all claims.  Dkt. No. 28.

20.    On January 29, 2025, Lead Counsel and Defendants' Counsel participated in a full-day in-person mediation session before Melnick.  In advance of that session, the Settling Parties prepared and exchanged detailed mediation statements.  The session ended without an agreement, but Melnick remained in contact with the parties, and settlement negotiations continued.  After a second, half-day virtual mediation session on April 10, 2025, the Settling Parties agreed in principle on April 14, 2025, to resolve the claims asserted in this Litigation for $5.5 million in return for a release of all claims against Defendants, as further detailed below.  On April 25, 2025, the Settling Parties executed a Memorandum of Understanding setting forth the terms of the agreement in principle ("MOU").

21.    On May 27, 2025, Plaintiffs filed a motion for preliminary approval of the settlement.  Dkt. No. 46.

22.    On May 28, 2025, the Court issued the Preliminary Approval Order. Dkt. No. 47.  The Court scheduled the Final Approval Hearing for final approval of the Settlement, attorney's fees and expenses, Lead Plaintiffs' awards, and to hear any objections by Settlement Class Members for October 9, 2025, at 12:30 p.m. On September 4, 2025, the Court adjourned the Final Approval Hearing to December 3, 2025 at 1:00 p.m.  Dkt. No. 49.

23.    Thereafter, Defendants and/or their insurers paid $5.5 million into an escrow account for the Settlement Class's benefit.

## III.    THE SETTLEMENT

### A.    Reasons for the Settlement

24.    Although Plaintiffs and Lead Counsel maintain that the claims asserted in this Action are meritorious and that the evidence developed to date supports them, they recognize and acknowledge the inherent difficulty of proving claims under the federal securities laws, and the substantial expense and duration of continued proceedings that would be necessary to prosecute the Action.  Plaintiffs and Lead Counsel are also mindful of the possible defenses to the claims asserted in this Action, as well as the uncertainties presented by complex litigation.

25.    If the Settling Parties did not agree to settle, they would have faced an expensive discovery process, class certification, and summary judgment briefing, and the risks of trial.  Were the case to proceed to trial, a jury would have to determine numerous complex securities law issues and navigate battles of the experts regarding market efficiency, loss causation, damages, and other issues related to Defendants' liability.  For example, a jury would have to determine: (i) whether Defendants made false or misleading statements or omissions; (ii) whether the alleged misrepresentations and omissions were material; (iii) whether Defendants acted with scienter; (iv) whether Mallinckrodt securities traded in an

11

efficient market, entitling Plaintiffs to a presumption of reliance; and (v) the artificial inflation of Mallinckrodt securities and how much of the price declines on the alleged corrective disclosure dates resulted from the alleged corrective disclosures. Any recovery would be uncertain and, because of the near certainty of appeals, inevitably delayed by years.

26. The scope of merits discovery and class certification discovery would be large given the length of the Class Period, evidence concerning price impact, and the complexity of the Complaint's allegations. The parties would have incurred substantial costs, and engaged in prolonged litigation through class certification, summary judgment, trial, and likely appeals. Discovery costs (including document production and hosting fees) would be significant, further eroding the ultimate class recovery. Lead Counsel would anticipate reviewing at least tens of thousands of pages of documents, if not more, and taking many depositions.

27. In addition to merits discovery, the Settling Parties would have to engage in expert discovery on questions of class certification, reliance, loss causation, and damages, amongst other topics. The parties would present dueling experts and incur substantial costs (including for expert reports and testimony regarding market efficiency, price impact, loss causation, damages, and merits). Even assuming a favorable trial outcome, Defendants would likely appeal, further delaying any benefit to the Settlement Class. Moreover, even if a larger judgment

12

were recoverable at trial, courts recognize that delay occasioned by trial, post-trial, and appellate processes greatly reduces the value of any award.

28.    Despite Lead Counsel's confidence in the merits of the Action, significant risks exist to proving liability and damages.  Despite prevailing at the motion to dismiss phase, as the Court observed, success at a motion to dismiss has no bearing on whether Plaintiffs will ultimately be able to prove their case.  Plaintiffs would still need to survive summary judgment and establish falsity, materiality, and scienter to a jury's satisfaction.  In particular, Plaintiffs would need to prove that Defendants knew or recklessly disregarded that the Company could not meet its obligations based on its current revenues and cash-on-hand.

29.    Defendants would also vigorously contest price impact at class certification.  For example, Defendants would likely argue that there was no price impact after the SEC filings and earnings calls in which Defendants allegedly made misleading representations about Mallinckrodt's financial health and argue that declines in Mallinckrodt's stock price were not attributable to any fraudulent concealment of its financial state.  While Lead Counsel believes Plaintiffs have strong arguments to rebut these and other contentions at class certification, there is a risk that their motion for class certification would be denied.

30.    In contrast to the foregoing, the Settlement represents an immediate and certain benefit for the Settlement Class.  Lead Counsel, having evaluated the

13

substantial risk, time, and expense required to prosecute this Action through trial and appeals, strongly believes that the Settlement is a very favorable result for the Settlement Class.

### B.    Settlement Terms

31.    The Settlement provides the Settlement Class with $5.5 million in cash, which Plaintiffs estimate at 15.24% of estimated damages.

32.    Plaintiffs and Lead Counsel retained Stanford Consulting Group, Inc., which provides research, analysis, and expert testimony in complex business litigation, particularly securities class actions, to provide advice on potential damages in the Action.

33.     Stanford Consulting Group, Inc. analyzed several damages scenarios, based on the corrective disclosures alleged in the Complaint, under multiple common trading models designed to reflect investor behavior. Applying these methodologies to corrective disclosure dates that showed statistically significant price declines led to class-wide damages of approximately $36.1 million.

34.    Defendants contested the amount of class-wide damages, disagreeing with Plaintiffs' damage calculation of the amount of actual harm that members of the proposed Class could have suffered.  The Settlement therefore could represent an even higher percentage of total possible damages than it does under Plaintiffs' estimate.

14

35.    The $5.5 million Settlement amount is a highly favorable result that is in line with the median settlement for similar securities class actions. *See* JANEEN MCINTOSH & SVETLANA STARYKH, RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: 2024 FULL-YEAR REVIEW ("*NERA Report*") (NERA Jan. 22, 2025), at 27 (Fig. 24) (showing the median settlement value in securities class actions in 2024 was 1.2% of estimated damages, and for cases between 2015–23 the median settlement value ranged between 1.5% and 2.5% of estimated damages).[3] In addition, the Settlement represents a much higher percentage of Defendants' damages estimate, which was substantially lower than Plaintiffs' estimate.

36.    Defendants have not admitted to any liability or any wrongdoing as part of the Settlement and adamantly maintain that they are not liable to the Settlement Class.

## IV.    THE COURT'S PRELIMINARY APPROVAL ORDER AND PLAINTIFF'S DISSEMINATION OF NOTICE

### A.    Preliminary Approval Order

37.    On May 28, 2025, the Court issued the Preliminary Approval Order. Dkt. No. 47.

38.    In the Preliminary Approval Order, the Court:

---

[3] *See* https://www.nera.com/content/dam/nera/publications/2025/PUB_2024_Full-Year_Sec_Trends_0122.pdf.

15

a) preliminarily approved the Stipulation and the Settlement set forth therein, subject to further consideration at the Final Approval Hearing;

b) scheduled a Final Approval Hearing for October 9, 2025, at 12:30 p.m., to determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate and should be approved; whether a judgment as provided in the Stipulation should be entered; whether the proposed Plan of Allocation should be approved; and to determine any amount of fees and expenses that should be awarded to Lead Counsel and to Plaintiffs;

c) appointed Angeion Group ("Angeion" or "Claims Administrator") to supervise and administer the notice procedure as well as the processing of claims;

d) approved the form and content of the Postcard Notice ("Postcard"), Notice of Proposed Settlement of Class Action ("Long Form Notice"), the Proof of Claim and Release form ("Proof of Claim"), and the Summary Notice;

e) directed Angeion to take all reasonable efforts to cause a copy of the Postcard to be mailed to potential Settlement Class Members;

f) directed copies of the Long Form Notice and Proof of Claim to be posted on an Angeion website designated for the Action no later than June 18, 2025 (the "Notice Date");

g) directed Angeion to cause the Summary Notice to be posted over *GlobeNewswire* and to be published in the national edition of *Investor's Business Daily* no later than fourteen (14) calendar days after the Notice Date;

h) directed Counsel to serve on Defendants' counsel and file with the Court proof of such mailing and publication at least seven (7) calendar days prior to the Final Approval Hearing;

i) established procedures and deadlines for Settlement Class Members to object to the Settlement, Plan of Allocation, award of attorneys' fees, reimbursement of expenses, or award to Plaintiffs and to appear at the Final Approval Hearing; and

16

j)      established procedures and deadlines for Settlement Class Members to submit Proofs of Claim or seek exclusion.

39.    On September 4, 2025, the Court issued an order adjourning the Final Approval Hearing to December 3, 2025, at 1:00 p.m.

**B.      Notice**

40.    Attached hereto as Ex. 1 is a true and correct copy of the Cody Declaration, which sets forth the efforts undertaken by Angeion to mail the Notice and Proof of Claim to potential Settlement Class Members, to publish the Summary Notice, and to establish the website and Internet notice.

41.    As detailed in the Cody Decl., Angeion mailed or caused to be mailed a total of 6,392 Postcards to potential Settlement Class Members, brokers, and other nominees.  The Summary Notice was published in the national edition of *Investor's Business Daily* on June 30, 2025, and posted over *GlobeNewswire* on July 2, 2025.

42.    Additionally, Angeion posted the Long Form Notice, the Preliminary Approval Order, and the Stipulation on a case-specific website, www.MallinckrodtContinentalSecuritiesSettlement.com.

43.    As required by Federal Rule of Civil Procedure 23, due process, and the PSLRA, 15 U.S.C. §78u-4(f)(7), the Notice: (a) described the nature of the Action; (b) included the definition of the Settlement Class; (c) set forth the Settlement Class's claims; (d) described the Settlement's terms; (e) described the Plan of Allocation; (f) disclosed that Plaintiffs' Counsel intends to seek attorneys'

17

fees of one-third (33.33%) of the Settlement Fund, plus reimbursement of expenses up to $350,000, and an award for Plaintiffs up to $20,000; (g) advised Settlement Class Members of the right to exclude themselves from the Settlement Class and the binding effect of not doing so; (h) provided the deadline and procedure for filing a proof of claim, opting-out of the Settlement, or opposing the Settlement, Plan of Allocation, award of attorneys' fees, reimbursement of expenses, or award to Plaintiffs; (i) provided the necessary information for any Settlement Class Member to examine the Court records should they so desire; (j) provided the date, time, and place of the Final Approval Hearing; (k) summarized the reasons why the Settling Parties are proposing the Settlement; (l) provided the contact information for Lead Counsel; (m) provided instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name; and (n) stated the binding effect of a judgment on Settlement Class Members.

44.     The notice procedures set forth above satisfied federal due process because they more than adequately apprised the interested parties of the pendency of the Action and afforded them the opportunity to present their objections.

**C.     Reaction of the Class**

45.     To date, no members of the Class have objected to the Settlement, the Plan of Allocation, the attorneys' fees award, the requested reimbursement of

18

expenses, or the award to Plaintiffs from any Settlement Class Member, and they have received no requests for exclusion.

### D.      The Plan of Allocation

46.      Pursuant to the Preliminary Approval Order, and as explained in the Long Form Notice, all Settlement Class Members who wish to participate in the Settlement must submit a Proof of Claim to Angeion postmarked no later than seven (7) calendar days after the date of the Final Approval Hearing.  All Settlement Class Members who wish to exclude themselves from the Settlement must file a request for exclusion by November 12, 2025.

47.      As set forth in the Long Form Notice, all Settlement Class Members who timely file a valid Proof of Claim form entitling them to a recovery of $10.00 or more will receive a distribution of the Settlement proceeds, after deduction of attorneys' fees, expenses, notice/administration expenses, Plaintiffs' award, and taxes incurred on interest income earned by the gross Settlement Fund.  The distribution will be made in accordance with the Plan of Allocation, set forth and described in detail in the Long Form Notice.

48.      The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Authorized Claimants who suffered economic loss as a result of Defendants' alleged fraud, as opposed to losses caused by market or industry factors not related to the alleged fraud.

49.    The Plan of Allocation was formulated by Lead Counsel, in consultation with a well-respected and experienced financial consultant, and was designed to ensure that the distribution of the Settlement Fund was fair and consistent with Plaintiffs' theory of the case, which asserted that there was a decline in the price of Mallinckrodt shares reflecting a disclosure of the truth relating to the alleged misconduct, and to ensure that the allocation comported with the federal securities laws, including principles of loss causation.

50.    The Plan of Allocation does not compensate losses resulting from "in and out" transactions—losses from sales made prior to revelation of truth. *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

51.    The Plan of Allocation does not discriminate between Settlement Class Members in the same position, as each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund.

52.    Lead Counsel and their financial consultant determined that this was the fairest method of allocation of the Net Settlement Fund.

53.    A plaintiff incurs damages when purchasing a share at a price inflated as a result of false or misleading statements and/or omissions, provided that a later curative disclosure of that fraud causes the security price to decline. Price inflation

20

can be created by material misrepresentations and/or omissions on or before the purchase date, which remain uncorrected in whole or in part at that date. Damages are mitigated if the share is later sold, while the price remains inflated, so that the original purchaser receives at sale an offsetting "bonus" equal to the dollar amount of inflation remaining at the sale date. Price inflation may be measured from changes in security prices, net of market, industry, and other non-fraud-related effects, when the true condition and prospects of the company are partially or fully disclosed. Price inflation present at the purchase date may be estimated by measuring the portion of the price decline caused by a curative disclosure.

54.    The actual loss suffered by a Settlement Class Period purchaser (between June 17, 2022, and August 25, 2023, both dates inclusive) in this Action can be observed as the portion of the Mallinckrodt-specific price decline—net of market and industry effects—caused by the revelation of fraud on June 5, 2023, and August 14, 2023. Accordingly, as demonstrated in the following table, if a Mallinckrodt share of Common Stock was sold before June 5, 2023, the Recognized Loss for that security is $0.00, and any loss suffered is not compensable under the federal securities laws:

21

| Table 1 Alleged Artificial Inflation in Mallinckrodt Common Stock | | |
|---|---|---|
| **From** | **To** | **Per-Share Price Inflation** |
| June 17, 2022 | June 2, 2023 | $2.45 |
| June 5, 2023 | August 25, 2023 | MNK Closing Price |
| August 29, 2023 | Thereafter | $0.00 |

** Per-share price inflation shall not exceed the per-share purchase price for the stock.

55.     Furthermore, in accordance with the "Limitation on Damages" provisions of the PSLRA (15 U.S.C. §78u-4(e)), damages on a share purchased during the Settlement Class Period and held as of the close of the 90-day period subsequent to the Settlement Class Period (the "90-Day Lookback Period") cannot exceed the difference between the purchase price paid for the share and the average price of the share during the 90-Day Lookback Period.  Damages on shares purchased during the Settlement Class Period and sold during the 90-Day Lookback Period cannot exceed the difference between the purchase price paid for the share and the rolling average price of the share during the portion of the 90-Day Lookback Period elapsed as of the date of sale.

56.     Additionally, under the U.S. Supreme Court's decision in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005), damages are assessed only for shares purchased during the Settlement Class Period and retained through at least the first alleged curative disclosure—shares purchased during the Settlement Class Period and sold before the alleged curative disclosure do not incur damages.

22

57.    There have only no objections to the Plan of Allocation, which is set forth in the Notice.  Plaintiffs respectfully submits that it is fair, reasonable, and adequate and should be approved by the Court.

## V.    PLAINTIFFS' COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSMENT OF EXPENSES

### A.    Attorneys' Fees

58.    Plaintiffs' Counsel have represented the Settlement Class on a wholly contingent basis for over two years, not receiving any payment for their service or the expenses incurred in prosecuting this Action against Defendants and negotiating the Settlement.  Throughout this time, Plaintiffs' Counsel's dedication to recovering a favorable result for the Settlement Class has been expensive and challenging.

59.    The Notice informed Settlement Class Members that Plaintiffs' Counsel would apply for attorneys' fees in the amount of one-third (33.33%) of the Settlement Fund, plus reimbursement of expenses up to $350,000, and an award to Plaintiffs up to $20,000.00 in total.

60.    Plaintiffs' Counsel requests that the Court award a fee of one-third (33.33%) of the Settlement Fund, or $1,833,333.33, plus accrued interest.  Pursuant to an agreement between Plaintiffs' Counsel, 77% of the fee would be allocated to Pomerantz, and 23% of the fee would be allocated to DJS.

61.    As discussed in Plaintiffs' Memorandum of Law in Support of Motion for Award of Attorneys' Fees and Expenses, and Awards to Plaintiffs filed

23

concurrently herewith, the requested fee is within the range of reasonable fees awarded in common-fund cases. The one-third (33.3<u>3</u>%) fee is also strongly supported and should be approved based on the facts of this case, including the superb result achieved for the Settlement Class, the skill required, the quality of work performed, and the risk of pursuing claims on a contingency basis.

62.    As set forth in the Lodestar Report included as Ex. A to the Pomerantz Decl. (attached as Ex. 2 hereof), Pomerantz has committed 622.22 hours to litigating this Action from the initial investigation to its resolution. As set forth in the DJS Decl. (attached as Ex. 3 hereof), DJS has committed 85.6 hours to litigating this Action from the initial investigation to its resolution. The hours committed by Plaintiffs' Counsel include time spent on:

  a. Preparing briefing in connection with the motion for appointment of Plaintiffs;

  b. Retaining and working with investigators to locate and interview numerous confidential witnesses, who were former employees of Mallinckrodt with knowledge of the events relevant to the allegations in the Complaint;

  c. Reviewing and analyzing Mallinckrodt Settlement Class Period and pre- and post-Settlement Class Period SEC filings, annual reports, press releases, quarterly earnings calls, investment conference transcripts, and other public statements;

  d. Reviewing and analyzing Mallinckrodt's First and Second bankruptcy filings and issues related to the Company's bankruptcies, preparing and filing the Suggestion of Bankruptcy;

24

e. Thoroughly researching the securities laws and intricacies of Mallinckrodt's business and online community;

f. Conducting all work with a damages expert, including retaining and consulting with the expert and analyzing and exchanging write-ups at various phases of the litigation and during the mediation and settlement processes;

g. Preparing the detailed Complaint, including drafting such complaint and performing all legal and factual analysis, and expert consultation;

h. Opposing Defendants' Motion to Dismiss the Complaint, which raised and evaluated numerous complex issues specific to the Action;

i. Pursuing discovery, including drafting and serving discovery disclosures, requests, responses and objections, and subpoenas, meeting-and-conferring with opposing counsel to agree on protective order and ESI protocols and to resolve discovery disputes,

j. Overseeing and conducting all mediation and settlement efforts, including, without limitation, drafting a mediation statement, participating in an all-day mediation session before mediator Jed D. Melnick of JAMS, making all presentations to the mediator, negotiating settlement with counsel for Defendants, and drafting and revising all settlement-related documents and court papers;

k. Obtaining competing bids for claims-administration work related to the Settlement before selecting a competitive bidder to serve as Claims Administrator, and working with the Claims Administrator to effectuate notice and oversee the administration process;

l. Securing the services of the Escrow Agent;

m. Preparing the motion papers and related documents necessary to obtain preliminary approval of the Settlement and provide notice of the Settlement to Settlement Class Members; and

n. Preparing the motion papers and related documents necessary to obtain final approval of the Settlement.

25

63.     Plaintiffs' Counsel's expertise has been vital to obtaining this favorable result for the Settlement Class.

64.     As set forth in detail in Ex. C to Ex. 2 hereto, Pomerantz is a nationally recognized class-action firm with extensive experience litigating and negotiating settlements as lead or co-Counsel in complex securities class actions.

65.     Based on the hours expended by Plaintiffs' Counsel, and the current billing rates for the firm's professionals, the total lodestar is $668,154.00.[4]  The lodestar results in a multiplier of approximately 2.74, which is determined by dividing the $1,833,333.33 requested fee by the firm's $668,154.00 total lodestar.

66.     The Lodestar Report attached as Ex. A to the Pomerantz Decl. lists the amount of time spent by Pomerantz in the prosecution of this Action.  The firm's time is taken from daily time records regularly prepared and maintained in the ordinary course of business.

67.     The number of hours reasonably and necessarily spent by Pomerantz on this Action is 622.22.  Pomerantz's hourly billing rates for the professionals working on this Action ranged from $500 to $1,050.  The hourly rates for attorneys and professional staff at Pomerantz are the usual and customary rates charged for each individual in non-contingent matters and conform to industry practice.

---

[4] Excludes work on motion seeking attorneys' fees, reimbursement of expenses, and awards to Plaintiff.

26

68.　　The lodestar summary within the DJS Decl. lists the amount of time spent by DJS in the prosecution of this Action.  The firm's time is taken from daily time records regularly prepared and maintained in the ordinary course of business.

69.　　The number of hours reasonably and necessarily spent by DJS on this Action is 85.6.  DJS' hourly billing rate for the professionals working on this Action is $1,000.  The hourly rates for attorneys and professional staff at DJS are the usual and customary rates charged for each individual in non-contingent matters and conform to industry practice.

70.　　As set forth in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Award of Attorneys' Fees and Expenses, and Awards for Plaintiffs, a multiplier of 2.74 is within the typical range of a fair and reasonable award.

**B.　　Costs and Expenses**

71.　　The expenses incurred in the prosecution of this Action are set forth in Exhibit B to the Pomerantz Decl.  In total, Plaintiffs' Counsel has incurred $289,981.79 in expenses.

72.　　Exhibit B to the Pomerantz Decl. lists the unreimbursed expenses that Plaintiffs' Counsel reasonably and necessarily incurred in the prosecution of this Action.

73.　　These expenses are reasonable in light of the pace and duration of this Action and were necessarily incurred for its successful resolution.

27

## VI.    AN AWARD TO THE PLAINTIFFS IS WARRANTED

74.    The Notice advised Settlement Class Members that Plaintiffs would seek a total award of no greater than $20,000.00.

75.    Plaintiffs seek an award in the amount of only $20,000.00, or $10,000 per Lead Plaintiff.  This award is justified in light of Plaintiffs' efforts and lost time overseeing the prosecution of the Action, as well as the negotiations leading to the Settlement.  In particular, Plaintiffs (a) communicated with Lead Counsel regarding the posture and progress of the case; (b) compiled their trading data and completed their certifications in connection with their motion to be appointed Plaintiffs; (c) reviewed all of the significant pleadings and memoranda of law filed in the Action; (d) consulted with Lead Counsel regarding the settlement negotiations and mediation; and (e) evaluated and approved the proposed Settlement.  *See* Declaration of Michael Gorzynski in Support of Lead Plaintiff Continental General Insurance Company's Motions for (1) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Plaintiffs, dated October 22, 2025, submitted as Ex. 4 hereto; and Declaration of Declaration of Michael Gorzynski in Support of Lead Plaintiff Percy Rockdale LLC's Motions for (1) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds

28

and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Plaintiffs, dated October 22, 2025, submitted as Ex. 5 hereto.

76.    Given the important contributions and the time and effort expended by Plaintiffs, the requested award is warranted and should be approved.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 29, 2025


*/s/ Brian Calandra*
Brian Calandra

29